[No. 15757.   Department One.—July 16, 1895.]

# A. C. DIGGINS, RESPONDENT, *v.* B. M. HARTSHORNE, APPELLANT.

STREETS—JUDICIAL NOTICE—DEDICATION—PASSAGE OF ORDINANCE—QUES-
TIONS OF FACT.—The courts will take judicial notice of streets estab-
lished by act of the legislature, and of their relation to each other, and
of the directions in which they run; but they do not take judicial notice
of the existence and location of streets established by dedication, or
opened or adopted by a municipal ordinance. The dedication or the
passage of the ordinance is a question of fact to be determined upon
the sufficiency of evidence.

ID.—LOCATION OF OFFICIAL STREET—STREET IMPROVEMENT—VALIDITY OF
ASSESSMENT—FINDING—CONFLICT OF EVIDENCE.—Where the actual
location of an official street is an essential fact in determining the valid-
ity of an assessment for a street improvement, and the evidence is con-
flicting as to its location, the finding of the court upon that question
cannot be disturbed upon appeal.

ID. — JURISDICTION OF SUPERVISORS OF SAN FRANCISCO — LOCATION OF
STREETS.—Under the statute of 1871–72, declaring that all the streets laid
down on the maps in the office of the city and county surveyor, com-
monly known as the "Brooks and Potter map" and "Humphreys'
map," are public streets for the purpose of the law, the board of super-
visors has jurisdiction to order the improvement of any of the streets
delineated on either map, and to order the grading of the whole or any
part thereof.

ID.—STATUTORY CONSTRUCTION—REFERENCE TO MAPS—"AND" CONSTRUED
AS " OR."—The statute of 1871–72 cannot be construed so as to require
that the streets therein referred to shall be those delineated upon both
maps described in the statute, but gives jurisdiction to the supervisors
over each street, or any part thereof, as delineated upon either map, and
the word " and " as used in the statute in reference to the maps is to
be construed as " or."

ID.—ACCEPTANCE OF WORK BEFORE COMPLETION OF CONTRACT—APPEAL.—
Where the superintendent has accepted the work before the completion
of the contract it is incumbent upon the owner first to appeal to the
supervisors, and seek from that body a correction of the error, before
he can make such defense to the enforcement of the assessment.

ID.—DETERMINATION OF LOCATION OF STREET BY SUPERINTENDENT—CON-
CLUSIVENESS—FAILURE TO APPEAL.—The superintendent of streets may
determine, in the first instance, whether the contractor has completed
his contract, and this includes the determination by him of the location
of the street intended by the supervisors in the description of the work
ordered to be done; and, in the absence of an appeal from his decision,
his judgment thereon must be accepted as conclusive, and the contractor
may rely upon his decision, and upon the acquiescence of the owners
therein, by their failure to appeal.

ID.—BASIS OF ASSESSMENT—FRONTAGE—SHAPE AND SIZE OF LOTS.—The
basis of the assessment is the frontage of the lot upon the work, and the

frontage of each lot determines the amount of the assessment against that lot, irrespective of its shape, size, or depth, nor is there any requirement that the lots to be assessed shall be rectangular with the street on which they front.

ID.—INCORRECT DELINEATION OF LOT BY SUPERINTENDENT—APPEAL.—If the superintendent does not properly delineate an owner's lot upon the diagram, or includes with it property which should be included in another lot, his act can be corrected on appeal to the supervisors; but an owner cannot be said to be "aggrieved," where the proper amount is assessed according to the correct frontage of his lot, merely because the superintendent has incorrectly delineated the interior lines of the lot.

ID.—FORECLOSURE OF LIEN—DESCRIPTION OF LAND.—In an action to foreclose the lien of a street assessment the plaintiff must describe the land with sufficient definiteness to enable the purchaser under a decree for its sale to obtain possession thereof; but the complaint and judgment must be limited to the description of the lot as found in the assessment, and unless the diagram contains such a delineation of the lot that a definite description thereof can be embodied in the complaint there can be no foreclosure of the lien.

ID.—PLEADING—IDENTIFICATION OF LOT ASSESSED.—Where the complaint describes a lot assessed by streets and distances, and as being the same lot shown by a specified number on the assessment and diagram, it sufficiently identifies the lot assessed, and confines the particular description in streets and distances to those delineated upon the diagram.

ID.—DESCRIPTION IN JUDGMENT—DISCREPANCY BETWEEN DIAGRAM AND OFFICIAL MAP—REFERENCE TO DIAGRAM.—Where one of the main issues in the foreclosure of a lien for a street assessment is the proper location of a street, and there is evidence tending to show that the street as delineated upon the official map of the city is not located as delineated upon the diagram, the court, in its judgment, must give such description of the lot to be sold as will identify it with the lot assessed, and prevent any controversy as to the property purchased at the sale.

ID.—PARTIES—ASSIGNMENT OF ASSESSMENT AS SECURITY—POWER TO COLLECT.—Where an assessment is assigned as security, and the assignee in express terms is authorized to demand, sue for, settle, and compromise the assessment, an action to foreclose the lien is properly brought in the name of the assignee.

ID.—AWARD—TIME FOR ENTERING INTO CONTRACT—HOLIDAY.—Where the statute requires the person to whom the contract was awarded to enter into the contract within ten days after the award, and the last of the ten days is a holiday, the contractor has the whole of the next day to enter into the contract.

ID.—RECORD OF CONTRACT—OMISSION OF SUPERINTENDENT.—The requirement that the superintendent shall cause the contract to be recorded in the office of the county recorder is an official duty imposed upon him; but his failure to perform it does not impair a valid contract previously entered into.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   WALTER H. LEVY, Judge.

The facts are stated in the opinion of the court.

*Boyd, Fifield & Hoburg,* for Appellant.

The plaintiff had no title which will support this action. (*Foley* v. *Bullard,* 99 Cal. 516.) The omission to assess the assessable frontage renders the assessment void. (*Gately* v. *Bateman,* 7 Pac. Coast L. J. 364; *Ryan* v. *Altschul,* 37 Pac. Rep. 339.) The fact that a street is laid down on a map does not make it such in fact. (*Whelan* v. *Boyd,* 93 Cal. 500; *Schmidt* v. *San Francisco,* 100 Cal. 302.) Private property cannot be taken by laying it down on an official map as a street. (*Payne* v. *English,* 79 Cal. 547.)

*J. M. Wood,* for Respondent.

The assessment in accordance with the frontage was proper. (*Boyle* v. *Tibbey,* 82 Cal. 11.) If the street superintendent had incorrectly assessed appellant's lot by crediting it with too much or too little frontage, such error should have been cured upon an appeal to the board of supervisors, which had exclusive jurisdiction in the matter. (Stats. 1872, sec. 12, p. 815.) As to the contention of appellant that the attempted assessment for the work done on the crossing of Seventh and Berry streets is void, it is sufficient to say that the respondent claimed no recovery, and got no judgment for such item, and whether that item of the assessment is a valid one or not, is not here material. (*Ede* v. *Knight,* 93 Cal. 165.)

HARRISON, J.—Action to foreclose the lien of a street assessment in the city and county of San Francisco. Under proceedings properly taken therefor by the board of supervisors of the city and county of San Francisco, the superintendent of streets entered into a contract November 28, 1879, with Buckman, the plaintiff's assignor, for grading Seventh street from the northerly line of Berry street to Channel street; and, after the work had been completed to his satisfaction, issued an assessment therefor. The following is a copy of the

diagram which is attached to the assessment, so far as
the present action is affected.

The present action was brought to foreclose the lien
of the assessment against lot 3.    It is contended by the
appellants that, upon the official map of San Francisco,
Channel street runs from Third to Eighth streets at
right angles with Seventh street, and parallel to and
two hundred and seventy-five feet southerly from Berry
street, and that, as by the above diagram Channel street
intersects Seventh street. diagonally, the assessment
shows upon its face that the work contracted for has not
been performed, and that the expense of the work done
has not been assessed upon all the property liable to be
assessed therefor.    This contention is supported by the
further contention that the court will take judicial notice
of the location of Channel street upon the official map
of the city and county.

It was held in *Whiting* v. *Quackenbush*, 54 Cal. 306,
that, inasmuch as the Van Ness map had been made
official by an act of the legislature (Stats. 1858, p. 56),
the streets designated thereon had been " established by

law," and that the court would take judicial notice of them (Code Civ. Proc., sec. 1875, subd. 2); and in *Brady* v. *Page*, 59 Cal. 55, it was further held that, in taking judicial notice of these streets, courts would take judicial notice of their relation to each other and of the directions in which they run. It has never been held, however, that a court would, by its judicial knowledge, determine whether the space set apart upon a map for a street is correctly located upon the ground, or, when the line of such street as a boundary is disputed, fix it without evidence. The owner of a tract of land in a city may offer to dedicate a portion thereof for a street, either by throwing the space open for use, or by an actual grant to the public, or by selling lots bordering thereon; or he may record a map of the tract, with streets delineated thereon. In such cases the question of dedication may be disputed, and courts do not take judicial notice of the existence and location of the streets, but determine the fact of dedication upon the sufficiency of the evidence to establish it. Neither can courts take judicial notice of the existence of a street that has been opened or adopted by a municipal ordinance, without proof of the passage of such ordinance. In the present case the defendants introduced at the trial a witness from the office of the city and county surveyor, who produced from the records of that office several maps upon which Channel street was delineated, upon no two of which was it delineated alike, and who also testified that in that office there were four different authorities for the lines of Channel street, and four sets of lines for the street. One of the maps so produced was the above-named Van Ness map, and although on this map there is no street designated by the name of Channel street, yet in the space to the east of Seventh street, which on other maps is designated as Channel street, there are two parallel lines which are deflected before reaching Seventh street, and cross the block at that corner of Seventh street in nearly the same direction as upon the above diagram. Between these two deflected lines are

written the words "Proposed Canal Channel." The Brooks and Potter map, sometimes called the Engineers' map, which was adopted as the official map in 1866, represents Channel street at its intersection with Seventh in the same form in which it is represented upon the aforesaid diagram, and in the deflected portion of the street are written the words "Channel street." Upon the map of 1870, usually called Humphreys' map, Channel street is delineated as lying parallel with Berry street, and as projecting beyond Seventh as far as Eighth street; but, as it approaches Seventh street from the east, it is delineated with two lines which deflect in the same manner as on the Brooks and Potter map, and are projected beyond Seventh street in the line of the deflection. There is no designation given to it after it leaves Seventh street. Upon the assessor's map the street is delineated in the same manner as on the diagram. It was shown by the witness that upon these several maps the distance along the easterly line of Seventh street, from Berry to its intersection with Channel street, was as follows: On the Brooks and Potter map, 181 feet; Humphreys' map, 209 feet; block book, 185 feet; assessor's book, 192 feet. And on the westerly side of Seventh street the distances from Berry to its intersection with Channel street are as follows: Brooks and Potter map, 110 feet; Humphreys' map, 138 feet; block book, 114.6 feet; assessor's block book, 121 feet $1\frac{1}{4}$ inches. These distances are not the result of an actual survey upon the ground, but are measurements made upon the several maps with a scale. It does not appear that either Berry or Channel street was ever located by monuments upon the ground, and at the time of the proceedings for the improvement of this street the whole of this region was covered with water. From these items of evidence it is seen that if the actual location of Channel street, as an official street, is an essential fact in determining the validity of the assessment, the conflict of evidence which was presented by the appellant himself is so great that the finding of the court cannot be disturbed.

We do not, however, consider that the determination of this question is essential to the determination of the validity of the assessment; that the correctness of the judgment appealed from must rest upon the consideration of other facts and legal propositions.

Section 1 of the act under which the proceedings were had (Stats. 1871–72, p. 804) declared that all the streets laid down on the maps in the office of the city and county surveyor, which are commonly known as the "Brooks and Potter map" and the "Humphreys map," were public streets "for the purpose of this law"; and gave to the board of supervisors jurisdiction to order the improvement of any of these streets. By section 3 of the same act the board of supervisors is authorized to order the grading of "the whole or any portion of the said streets." We have seen that Channel street, as laid out upon the Brooks and Potter map, corresponds to the diagram annexed to the assessment under consideration, and that there is laid out upon the Humphreys' map an open space corresponding to a portion of said street. The terms of section 1 of the act do not require that the streets laid down upon the map shall have been actually opened and dedicated to public use before the supervisors could order their improvement. If the supervisors should in fact attempt the improvement of a street that had not been so opened and dedicated, but which was in reality private property, their action would fail, not by reason of a want of statutory provision, but because of the inability of the legislature to confer authority to make such an improvement. No question of this character is, however, presented in the present case. It is conceded that Seventh street, upon which the grading was done, was at all times an open street dedicated to public use. The objection of the appellant rests upon the proposition that it appears upon the face of the assessment that the work contracted for had not been performed by reason of the fact that the true position of Channel street is different from its position as shown by the diagram. This objection, however, is obviated

when it is shown that the work "contracted for" is not to be determined by the actual location of Channel street upon the ground as it may have been originally laid out and dedicated to public use, but by its location as intended by the board of supervisors. The section of the statute above referred to gave the supervisors authority to order the grading of "any portion" of Seventh street. While the declaration in the statute that the streets laid down upon the designated maps are open, public streets, "for the purpose of this law," did not of itself make them in fact public streets if they were not so already, yet these spaces upon the maps were thereby identified as objects of reference by which to describe the limits of any improvement which might be made. The "portion" of a street which the supervisors could order improved was entirely within their discretion. It would have been within their power to order that Seventh street be graded for a distance of 200 feet southerly from Berry street, or to a point 200 feet distant upon the easterly side, and 100 feet distant upon the westerly side, of Seventh street. They had also the power to limit the portion of the street to be graded by the line of Channel street as laid down upon these maps, and this, it must be held, is what they intended to do. If the resolution ordering the work had been in terms to grade Seventh street from the northerly line of Berry street to Channel street, as said streets are laid down upon the Brooks and Potter map, referred to in section 1 of the statute, their power to order that portion of Seventh street to be graded could not be questioned, and we are of the opinion that the resolution adopted by them should receive the same construction as if it had been thus expressed. The proposition of the appellant that only the streets which are laid down upon the Brooks and Potter map *and* upon the Humphreys' map are subject to be improved by the supervisors cannot be maintained. This construction would exclude from their jurisdiction every street that is on the Humphreys' map which had not been previously delineated upon the Brooks and

Potter map, and thereby prevent the public improvement of a large portion of the streets in the city and county of San Francisco. The word "and" is in this connection to be construed as "or." (Sutherland on Statutory Construction, sec. 252.)

If, however, the work ordered by the supervisors and described in the contract was not thus limited, but required that Seventh street should be graded to the line of Channel street contended for by the appellant, there is presented the simple case of the superintendent of streets having accepted the work before the completion of the contract; and in that case it was incumbent upon the owner to first appeal to the supervisors, and seek from that body a correction of the error, before he could make such defense to the enforcement of the assessment. It was for the superintendent of streets to determine in the first instance whether the contractor had completed his contract, and this included the determination by him of the line of Channel street that was intended by the board of supervisors in the description of the work ordered to be done. If the true line of Channel street were not a matter of dispute, and the superintendent had accepted the work before the grading had been completed to that point, and issued an assessment therefor, under repeated decisions of this court the error would have been one which should have been corrected on appeal. Much more is this rule applicable where the limit of the work is susceptible of different locations. The determination of this question called for the exercise of judgment by the superintendent, and, in the absence of any appeal from his decision, his judgment thereon must be accepted as conclusive. In such a case the contractor may rely upon his decision and the acquiescence of the owners therein by their failure to appeal. In *Warren* v. *Riddell*, 106 Cal. 362, the contractor had graded the street to a line entirely at variance with the official grade, and it was held that unless an appeal had been first taken to the board of supervisors, the owner could not make that defense to a

suit upon the assessment.   When the assessment in the present case is examined in connection with the statute authorizing the work and the maps therein referred to, it cannot be said that "upon its face" the work contracted for has not been performed.   Neither does it appear upon the face of the assessment that any property liable to be assessed for the expense of the work has been omitted.   The appellant does not contend that if Channel street is properly located on the diagram any other property than that designated therein is assessable.   His contention in this respect is based upon his claim that Channel street is erroneously located thereon. The precise distance from Berry street at which Channel street is laid down on the maps named in the statute has never been officially declared, and the different distances given at the trial were reached by measurement with a scale.   One of these distances was less and the others more than is shown upon the diagram. These discrepancies, however, do not of themselves invalidate the assessment.   They are ascertained only by evidence outside of the assessment itself, and in such a case the assessment is not *felo de se,* but, if defective, is to be remedied upon an appeal.

The statute does not specify the depth to which the lands fronting on the work shall be assessed, or the shape or boundaries of such lots, its language being that the expense shall be assessed upon the lots and lands fronting thereon, " each lot " being separately assessed "in proportion to its frontage."   The basis of the assessment is the frontage upon the work, and the frontage of each lot determines the amount of the assessment against that lot, irrespective of its shape, size, or depth.   There is no requirement that the lots to be assessed shall be rectangular with the street on which they front, nor can this direction for the assessment impair the owner's right to dispose of his lands as he may desire.   If the superintendent does not properly delineate an owner's lot upon the diagram, or includes with it property which should be included in another

lot, his act can be corrected on an appeal to the super-
visors; but an owner cannot be said to be "aggrieved"
merely because the superintendent, while correctly giv-
ing the frontage of his lot and assessing the proper
amount thereto, has incorrectly delineated its interior
lines, since the amount of the assessment is in nowise
affected thereby.

In an action for the foreclosure of the lien of a street
assessment the plaintiff must describe the land with suf-
ficient definiteness to enable the purchaser under a de-
cree for its sale to obtain possession thereof; and, as the
description in the assessment is by reference to the dia-
gram, it is evident that, unless the diagram contains
such a delineation of the lot that a definite description
thereof can be embodied in the complaint, there can
be no foreclosure of the lien of the assessment. It is
only the lot assessed which is subject to the lien, and
the judgment directing the sale, as well as the complaint
for its foreclosure, must be limited to the description of
the lot as found in the assessment. The complaint in
the present case alleges the making of the assessment
and diagram, and the volume and page in which they
are recorded in the office of the superintendent of
streets, and then describes the lot of the defendant as-
sessed thereon, and which he asks to have sold in sat-
isfaction of the lien, as commencing at the northeast
corner of Seventh and Channel streets, and, after giving
its several boundaries, adds, as a further description,
"and is the same lot shown as lot No. 3 on said assess-
ment and diagram." This was a sufficient identification
of the lot assessed, and confines the particular descrip-
tion by streets and distances to those which are delin-
eated upon that diagram as fully as if they had been
made so by express reference. In the judgment, how-
ever, which was entered in the action the description of
the property which is ordered to be sold in satisfaction
of the lien is given as a lot commencing at the north-
east corner of Seventh and Channel streets, with the
same boundaries and distances as are given in the com-

plaint, but there is no reference to the assessment or diagram, or to any map upon which those streets are delineated. As one of the main issues in the case was the proper location of Channel street, and as there was evidence before the court tending to show that Channel street on the official map of the city is not located as it is delineated upon the diagram, and as it was also shown that the land at the northeast corner of Seventh street and the line of Channel street, as contended for by the appellant, is owned by him, the court in its judgment should have given such a description of the lot to be sold as would identify it with the lot assessed, and thus prevent any controversy between the purchaser under the judgment and the appellant regarding the property purchased.

The action is properly brought in the name of the plaintiff. Buckman had assigned the assessment to him, and in express terms had authorized him to " demand, sue for, settle, and compromise the same, as in his judg-. ment may be best." This authority was not made nugatory by reason of the assignment having been made to secure an obligation from Buckman to Mrs. Dorland. It was in the nature of a power of sale in a deed of trust, and could be exercised by the grantee of the power. (See *Works* v. *Merritt*, 105 Cal. 465.) *Foley* v. *Bullard*, 99 Cal. 516, has no application. In that case Lang and Ruggles, to whom the owners of the assessment had assigned it as security for their indebtedness, had reassigned it to one of the owners, and it was held that by this reassignment their lien was terminated.

Other points presented in the appellant's brief do not require any special consideration. The statute required the person to whom the contract was awarded to enter into the contract within ten days after the award. The award to Buckman was made November 17th, but, as the 27th of November was Thanksgiving Day, he had the whole of the next day in which to enter into the contract. The requirement that the superintendent shall cause the contract to be recorded in the office of

the county recorder is an official duty imposed upon that officer, but his failure to perform this duty does not impair a valid contract previously entered into. The statute of 1878 (p. 231) is irrelevant to the proceedings for the improvement of the street, except to deprive the owners of any right of protest.

The superior court is directed to modify the judgment by changing the description of the land therein directed to be sold in conformity with this opinion; and, as so modified, the judgment and order will stand affirmed.

VAN FLEET, J., and GAROUTTE, J., concurred.

Hearing in Bank denied.