WIDAMAN v. HUBBARD et al.

(Circuit Court, S. D. California. July 27, 1898.)

No. 772.

1. JURISDICTION OF FEDERAL COURT—CITIZENSHIP—ANCILLARY PROCEEDING.

A bill filed in a circuit court to enjoin the further prosecution of an action at law pending therein is ancillary to the law action, and the court has jurisdiction without regard to the citizenship of the parties.

2. INSURANCE—ASSIGNMENT OF LIFE POLICY—RIGHTS OF ASSIGNEE.

An assignment of a life policy, which purports to transfer all rights thereunder absolutely in consideration of a sum advanced to the insured and the payment of future premiums, is not wholly void for illegality, but vests the legal title to the policy in the assignee, who may, after the death of the insured, maintain an action thereon in his own name, though he will be accountable as trustee for all the proceeds above the amount of his advances, with interest.

3. SAME—ENJOINING ACTION BY ASSIGNEE.

An action on a life policy by an assignee will not be enjoined where it is admitted that he has a lien on the proceeds for advances made the insured, unless such lien is extinguished by the proceeds of another policy, also assigned to him, and that he has not as yet realized on such policy, which is in litigation in another court.

This was a bill filed by O. P. Widaman, as assignee in insolvency of George W. Meade, against Anthony G. Hubbard, to enjoin the

prosecution by the defendant of an action at law to collect a policy of insurance on the life of the deceased assignor. Heard on demurrer to the bill.

Cheney & Taylor and Anderson & Anderson, for complainant.

Page, McCutchen & Eells, E. R. Annable, and Brousseau & Montgomery, for defendants.

WELLBORN, District Judge. Complainant sues to enjoin further proceedings in an action entitled "Anthony G. Hubbard v. New York Life Insurance Company," pending on the law side of this court, and to have determined certain equitable claims to a fund of $15,000, which said company has paid into court in said action in satisfaction of the liability therein sued on. The material allegations of the bill are these: Complainant, in November, 1896, was, by the superior court of the county of Los Angeles, state of California, appointed assignee in insolvency of one George W. Meade, whose petition in insolvency was filed in the month of October of the same year. The indebtedness of Meade's estate aggregates $30,000, and the only property belonging to said estate is the fund above mentioned. The New York Life Insurance Company is a corporation created under the laws of the state of New York, and on April 22, 1884, for an annual premium of $989.80, issued a tontine policy, numbered 186,405, for $20,000, on the life of said Meade, payable to Anna Meade, April 17, 1899, or upon the death of the said George W. Meade, should he die before said date. On the 14th day of August, 1894, in consideration of the payment by said Hubbard to said company, at the request of said George W. and Anna Meade, of the quarterly premium then due on said policy of $262.40, said policy was assigned to said Hubbard, and thereafter, on October 29, 1894, said parties entered into the following agreement:

"This article of agreement, made and entered into this 29th day of October, A. D. 1894, between George W. Meade, and his wife, Anna Meade, both of Redlands, San Bernardino county, California, parties of the first part, and Anthony G. Hubbard, of the same place, party of the second part, witnesseth: That, whereas, on the 22d day of April, in the year 1884, a policy of insurance on the life of George W. Meade, one of the parties of the first part, was issued and delivered to the said George W. Meade by the New York Life Insurance Co., of the state of New York, which policy was and is numbered 186,405; and whereas, on the 14th day of August, 1894, the said parties of the first part did assign unto the said party of the second part the said policy of insurance numbered 186,405, which assignment was made to the said party of the second part, and by the said party of the second part accepted as security for certain advances of money then made by the said party of the second part for the benefit of the said parties of the first part, and was also made and accepted, as aforesaid, to secure the said party of the second part for any further advances of money which he, the said party of the second part, may make to the said parties of the first part as the said parties of the first part and the said party of the second part may or should agree upon in the future; and whereas, the said party of the second part is now owner and holder of the mortgage upon certain real property located in the city of Redlands, county of San Bernardino, state of California, now owned by one or both of said parties of the first part, which said real property is described as follows, to wit: 'All of lots 1, 2, 3, 4, 5, and 6 of block 23, as laid down in a map entitled "Map No. 6" of a part of Redlands Heights, as recorded in the office of the recorder of said county of San Bernardino, state of Cali-

fornia, in Book 7 of Maps, at page 40,' and also all that part of Crescent avenue heretofore vacated and 'not occupied as a public street, lying northwest of and adjoining lot 1, aforementioned, together with 23 shares of the capital stock of the Redlands Heights Water Company; and whereas, the said mortgage so held against the said real property by the said party of the second part was given to secure the payment of a certain promissory note for $6,000, which said promissory note, with accrued and accumulating interest, now remains due and wholly unpaid; and whereas, said Anthony G. Hubbard, said party of the second part, is now the owner and holder of the said policy of insurance on the life of the said George W. Meade: Now, therefore, this article of agreement witnesseth that the said Anthony G. Hubbard shall be and remain the owner of the said policy of insurance hereinbefore referred to, and shall hold the same for the purpose of securing him, the said party of the second part, for any advances of money which he, the said party of the second part, may make to the said party of the first part, or either of them, and it is agreed that the said Anthony G. Hubbard may, at his option, hold the said policy of insurance as collateral security for the said promissory note hereinbefore referred to, and as additional security for the payment of the same, in addition to the mortgage which he now holds against the said real property hereinbefore referred to and described. But it is distinctly understood and agreed that the holding by the said party of the second part of the policy of insurance as further and additional security in connection with the said mortgage shall in no manner be construed as extending the time of payment of the promissory note, to secure the payment of which the said mortgage was given, and is now held by the said party of the second part, the object being to allow the said party of the second part the privilege or option of considering and holding the said policy of insurance as further security for the payment of the said promissory note in the said mortgage described and hereinbefore referred to, according to the terms of the said promissory note, as the same was originally drawn and as the same now exists. In witness whereof, the said parties have hereunto subscribed their names this 29th day of October, 1894.

"[Signed]                                                           George W. Meade.
"[Signed]                                                           Anna Meade."

On the day after said agreement was executed, to wit, October 30, 1894, said Hubbard advanced and paid the quarterly premium on said policy for said month of October, and thereafter, on January 17, 1895, advanced and paid the quarterly premium on said policy for said month of January. The promissory note mentioned in the agreement has been discharged. On the 13th day of March, 1895, said insurance company issued another policy of insurance,—No. 665,889,— for $15,000, on the life of said George W. Meade, payable to himself; the annual premium on said last-named policy being $562.50. On the 21st day of March, 1895, said Hubbard and Meade entered into the following agreement:

"This agreement, made and entered into this 21st day of March, A. D. 1895, by and between A. G. Hubbard, of the city of Redlands, San Bernardino county, party of the first part, and Geo. W. Meade, of the same place, the party of the second part, witnesseth: That whereas, the party of the second part now holds a policy of insurance on his life in the New York Life Insurance Company, of the state of New York, which policy is numbered 186,405; and whereas, the said party of the second part has had issued to him another policy of insurance on his life in the same company above mentioned for the sum of fifteen thousand dollars ($15,000.00), which said second policy of insurance is numbered 665,889; and whereas, the said party of the second part is unable to pay and keep up the payment of premiums due and to become due on each of said policies according to the terms of the same and each of the same; and whereas, further, said party of the second part desires the said party of the first part to advance to him, the said party

of the second part, the sum of three thousand six hundred ninety dollars ($3,690.90); and whereas, it is understood that if the said party of the first part shall pay and keep up the premiums due and to become due upon each of said policies of insurance during the lifetime of the party of the second part, subject to the limitations hereinafter recited, and shall also pay unto said party of the second part the said sum of $3,690.00, that the said party of the second part will transfer and assign unto the said party of the first part the said policy of insurance numbered 665,889, above referred to, as the property absolutely of the said party of the first part, so as to confer upon the said party of the first part, his heirs or assigns, the right absolute to receive and collect from the said New York Life Insurance Company, under the said policy numbered 665,889, upon the death of the party of the second part, the entire sum of money made by said policy last mentioned payable unto the said Geo. W. Meade, his executors, administrators, or assigns, and being, as mentioned in said policy, the sum of $15,000.00: Now, therefore, the said party of the first part does hereby agree to pay and keep up the payments of all premiums due and to become due upon both of the policies hereinbefore mentioned during the lifetime of the party of the 2nd part. And it is also agreed that first party is to advance and pay to the said party of the second part the sum of $3,690.00, the receipt of which is hereby acknowledged by the said party of the second part, and in consideration of the agreements hereinbefore undertaken to be performed by the said party of the first part, and also the payment unto him, the said party of the second part, the said sum of $3,690.00, the said party of the second part does hereby assign, transfer, and set over unto the said party of the first part in absolute ownership the said policy of insurance numbered 665,889, and does hereby authorize and empower the said party of the first part, his heirs, executors, administrators, or assigns, to receive and collect the said sum of $15,000.00, upon the happening of the event which shall entitle the holder or assignee of said policy or other person or persons thereunto entitled to demand and receive payment of said sum; and whereas, further, the said policy numbered 186,405 does, by its terms, mature and become payable on the 17th day of April, 1899: Now, therefore, it is further agreed, in consideration of the premises and matters hereinbefore recited and set forth, and in consideration of the faithful performance by the party of the first part of the things hereinbefore by him undertaken to be kept and performed, that if the said party of the second part shall survive until the said 17th day of April, 1899, that then, in that event, and upon the payment of the amount of money called for and then to become due under said policy numbered 186,405, the said party of the first part, his heirs or assigns, shall be entitled to and shall receive and be paid out of the proceeds of said policy numbered 186,405 the full sum of $15,000 in cash, and he, the said party of the first part, is hereby authorized and empowered to demand, sue for, and collect out of the proceeds of the said policy numbered 186,405 the said sum of $15,000, and in the event of the said party of the second part surviving until the said 17th day of April, 1899, and in the further event of the party of the first part receiving out of the proceeds of the policy numbered 186,405, upon the maturity of said policy, the said sum of $15,000, it is agreed that the party of the first part shall assign and retransfer unto the said party of the second part the said policy numbered 665,889, and upon the reassignment of the said policy to said party of the second part by the said party of the first part the liability of the party of the first part for the payment of further premiums on said policy shall then and there cease and terminate. And where as, first party now holds an assignment of said policy number 186,405, it is agreed that if party of the second part dies before the maturity of said policy the party of the first part will, on receipt of $15,000 (under either of the policies herein mentioned), reassign to the legal representatives of second party the said policy number 186,405, subject, however, to provisions of contract between parties dated Oct. 29th, 1894. Witness the hands of the parties this 21st day of March, 1895, and executed this in duplicate.

"[Signed]

A. G. Hubbard.
"Geo. W. Meade."

Appended to said agreement was the following writing, to wit:

"I, Anna Meade, wife of Geo. W. Meade, hereby certify and show that I have read the foregoing agreement, and am fully conversant with the terms. force, and effect of the same, and that the same meets my approval, and I hereby relinquish and release unto the said A. G. Hubbard all interest of any kind, class, or description which I now have or could hereafter have as an heir at law of Geo. W. Meade, or other interest which I may or could have in the sum of $15,000.00, which would be payable under the policy of insurance mentioned in said agreement as 665,889, on the death of said George W. Meade; and in anticipation of the payment of said sum on the death of said Geo. W. Meade, I hereby assign and transfer unto the said A. G. Hubbard, the party of the first part in the said agreement named, all right and interest which I now have or might hereafter have under and by virtue of said policy of insurance. Witness my hand this 21st day of March, A. D. 1895.

"[Signed]  Anna Meade.

"Anna Meade,<br>"By Geo. W. Meade,<br>"Her Atty. in Fact."

George W. Meade died January 1, 1897, at the city of Los Angeles, Cal., leaving said two policies in full force and effect. Afterwards Hubbard brought the common-law action already mentioned to recover the $15,000 due on said policy 665,889. The insurance company appeared in said action, admitting its liability for the amount named, but alleging that defendants Anna Meade, Sarah J. Turner, and Dr. Turner, her husband, and complainant, as assignee in insolvency of said George W. Meade, respectively claimed interests in said policy, and asking that it be permitted to pay said $15,000 into said court, and that the persons above named be substituted as defendants in place of itself. On June 1, 1897, the order asked for by said company was made, and thereupon said company paid said $15,000 into court, and the persons above named were duly brought in and substituted as defendants in said action. There is now pending in the superior court of the county of Los Angeles, Cal., an action—No. 59,344—entitled "The New York Life Insurance Company, a Corporation, Plaintiff, v. Anthony G. Hubbard, Anna Meade, Sarah J. Turner, and Margaret M. Cross, Defendants." The complaint in said action alleges the issuance of said policy No. 186,405 for $20,000, the death of said George W. Meade, that said company is willing to pay said amount to whoever may be entitled thereto, that the parties named as defendants respectively claim adverse interests in said policy, and that said company is ready and offers to deposit said sum of $20,000 in court, or pay the same to such person or persons as the court may direct, and prays that the persons named as defendants be required to interplead concerning their respective claims. Said company has not paid said $20,000 into court in said action, but its attorneys have the amount in their hands ready to deposit when the company is ordered to do so by said court.

The bill in this court sets forth the conflicting claims of the various parties as follows:

"That your orator has been informed and believes, and so states, that said A. G. Hubbard claims to be the owner of both of said policies, or that he has an interest in both of said policies, or that he holds both of said policies as security for moneys advanced by him to said George W. Meade and the said

Anna Meade, or to one or both of them, but that the exact nature of the claim and contention of the said Hubbard as to his respective rights under said policies, and each of them, is unknown to your orator. That the claim of the said Hubbard as to an interest in said policy No. 665,889, or to the proceeds thereof, is hostile and antagonistic to the equitable rights of your orator to said policy and to the proceeds thereof, and your orator is advised and believes, and so states, that the said Hubbard's 'said claim or claims to the proceeds of said policy is without right in equity and good conscience, and that, if he is entitled to be reimbursed for any advances made to George W. Meade and Anna Meade, that it is a right to be reimbursed therefor out of the proceeds of said policy No. 186,405, and that if he has a right to be reimbursed out of the proceeds of said policy No. 665,889 it is only after he shall have failed to be reimbursed out of said policy No. 186,405. That your orator has been informed and believes, and so states, that the other defendants in this action claim to be the owners of and entitled to the proceeds of said policy No. 186,405, and claim that if the said Hubbard is entitled to be reimbursed for any advances made to George W. Meade and Anna Meade, or to one or both of them, that said reimbursement should be made in the first instance from the proceeds of said policy No. 665,889; that the exact claim or claims of the said defendants and each of them to the proceeds of said policy 186,405 is unknown to your orator, but their said claim or claims to have any advances made by the said Hubbard to George W. Meade and Anna Meade, or to either of them, paid out of the proceeds of policy No. 665,889, before the proceeds of said policy No. 186,405 is liable therefor, is hostile and antagonistic to the rights of your orator, and is without equity and right, and against good conscience. That your orator claims that he, as assignee of the estate of George W. Meade, is the equitable owner of the proceeds of said policy No. 665,889, and that said Hubbard holds the legal title thereto in trust for your orator. That said Hubbard is not entitled to any of the proceeds of the said policy No. 665,889, or, if your orator is wrongly advised or is mistaken on that point, that then your orator is advised and believes, and so states, that if he has a lien on said proceeds for any such advances, it is secondary to his lien on the proceeds of said policy No. 186,405, and should be paid out of such proceeds first. Your orator further states that he is advised and believes, and so charges, that if he is compelled to pay any such advances so made by said Hubbard out of the proceeds of said policy No. 665,889, that then, under the contract set out herein of date the 21st of March, 1895, between said Hubbard and said George W. Meade, assented to and ratified by said Anna Meade, he is entitled to have said policy No. 186,405 transferred and assigned to him, and to hold the same until he shall be reimbursed therefrom for all sums that he may have to pay said Hubbard out of the proceeds of said policy No. 665,889. Your orator is advised and believes, and so states, that though he is a party to said suit No. 741, now pending on the law side of this court, that his rights are of an equitable character, and are dependent upon the rules and principles of equity for their protection and enforcement, and that this court in said action is without jurisdiction to administer the rights and equity that your orator is entitled to in the premises, and that your orator is without a full, perfect, and clear remedy in the matters involved in this controversy, save in a court of equity. Your orator further states that he is advised and believes that the rights of all the parties interested in said two policies and that are parties to said action No. 741 and said action No. 59,344 are so intermingled and blended that they can only be adjudicated and administered in a court of equity, and in one suit."

The prayer of the bill is that the defendants be required to set forth their respective claims to said property, and that the same be determined, and that further proceedings in the common-law action be enjoined. A demurrer to the bill has been interposed, on the following grounds, to wit: First, that this court has no jurisdiction of the cause, inasmuch as the bill does not show diverse citizenship of the parties; second, that the bill does not state a case for equitable

relief.    These grounds will be considered in the order in which I have stated them.

1. The bill is ancillary to the common-law action, and therefore the court has jurisdiction of the suit without regard to the citizenship of the parties.    Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27; Johnson v. Christian, 125 U. S. 643, 8 Sup. Ct. 989, 1135; Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136; Broadis v. Broadis, 86 Fed. 951.

2. The next question to be considered is whether or not the bill shows any ground for equitable relief.    Plaintiff in the common-law action, A. G. Hubbard, holds, by assignment, the policy therein sued on; not, perhaps, in absolute ownership, but as collateral security for a loan to the assured of $3,690, and for other moneys advanced in payment of premiums on said policy.    If the validity of said assignment be tested by the laws of the state where it was made,— California,—then the question is covered by statutory enactment. Section 2764 of the Civil Code of said state is as follows:

"A policy of insurance upon life or health may pass by transfer, will, or succession to any person, whether he has an insurable interest or not, and such person may recover upon it whatever the insured might have recovered."

See, also, Gilman v. Curtis, 66 Cal. 116, 4 Pac. 1094; Curtiss v. Insurance Co., 90 Cal. 245, 27 Pac. 211; Works v. Merritt, 105 Cal. 467, 38 Pac. 1109; Diggins v. Hartshorne, 108 Cal. 154, 41 Pac. 283; Wetmore v. City of San Francisco, 44 Cal. 294.

Independently, however, of any statute, I am satisfied that there is no such wagering element in the assignment to Hubbard as invalidates it, and the law has been so declared by the supreme court of the United States in one of the cases cited by complainant himself, wherein it is said:

"Although the agreement between the trust association and the assured was invalid as far as it provided for an absolute transfer of nine-tenths of the proceeds of the policy upon the conditions named, it was not of that fraudulent kind with respect to which the courts regard the parties as alike culpable and refuse to interfere with the results of their action.    No fraud or deception upon any one was designed by the agreement, nor did its execution involve any moral turpitude.    It is one which must be treated as creating no legal right to the proceeds of the policy beyond the sums advanced upon its security, and the courts will therefore hold the recipient of the moneys beyond those sums to account to the representatives of the deceased.    It was lawful for the association to advance to the assured the sums payable to the insurance company on the policy as they became due.    It was also lawful for the assured to assign the policy as security for their payment.    The assignment was only invalid as a transfer of the proceeds of the policy beyond what was required to refund those sums, with interest."    Warnock v. Davis, 104 U. S. 775.

See, also, Cammack v. Lewis, 15 Wall. 643; Burroughs v. Assurance Co., 97 Mass. 359; 2 May, Ins. (3d Ed.) 393.    From the last authority I quote the following:

"The right to sue, however, under these statutes, enacted in the interest of the family support, is not to be confounded with the right to appropriate and use the proceeds.    The assignee may well have the right to sue in his own name, and recover the amount payable by the policy, but he recovers to hold in trust for the beneficiaries.    'The rights of the child,' say the court, in 'Burroughs v. Assurance Co., 'cannot be set up to defeat this action.    No

trustee has ever been appointed to hold and manage the interest of the wife. The assignments to the plaintiff, assented to by the insurers, transferred to him the legal title in the policies, and the right to sue thereon. Palmer v. Merrill, 6 Cush. 288, note; Kingsley v. Insurance Co., 8 Cush. 393. If the assured had afterwards died, leaving no wife or child surviving, the assignments would have entitled the assignee to receive the whole amount of the policies to his own use. The plaintiff, having the legal title, may maintain this action at law, and, if he recovers judgment, will hold the proceeds, so far as they inure to the benefit of the child of the assured, in trust for him. The equitable rights of the child under the statute, and the extent to which they may be subject to a claim of the assignee for reimbursement of the sums paid by him for premiums and assessments or otherwise, cannot be now determined, but may be ascertained upon a bill of interpleader filed by the insurance company, or in a suit by the child against this plaintiff after he shall have recovered judgment in this action.' "

The rights of the assignee have been clearly stated thus:

"The use as collateral security of insurance policies upon bona fide loans vests in the pledgee the legal title, as upon an absolute assignment. Receiving such title, he may enforce the security to its full amount, holding any surplus after payment of his advances, premiums, and assessments paid for the pledgor or persons equitably entitled thereto." Coleb. Coll. Sec. p. 575.

If this be a correct statement of the law,—and I have no doubt but that it is,—it follows that a beneficiary cannot interfere with the progress of an action brought by the holder of the legal title, or the person vested with the right to collect, unless fraud or insolvency be charged against such trustee. Nor does the fact that in the present case the insurance company has deposited the money in court at all impair the rights of the trustee, or enlarge those of the beneficiaries. It is true that the insurance company, had it seen proper to do so, might, for its own protection, have exhibited a bill of interpleader against the different claimants (Spring v. Insurance Co., 8 Wheat. 268), but it could not, by depositing the money in court, give to the equitable claimants any rights which they did not before possess, nor take from Hubbard his right to collect the fund, and apply the same, so far as necessary, to the satisfaction of his debt. On this point, counsel for Hubbard, in his brief, well says:

"Certainly, if the possessor of a residuary interest has no right to control the collection, that right cannot be extended to him by the debtor, directly or indirectly."

There is another difficulty to any relief in the present suit, and this difficulty is emphasized in complainant's brief, where he says:

"Our contention is that the bill and contract and proposal of contract between Hubbard and the Meades, set out and made exhibits to the bill, show that Hubbard held two policies on the life of Mr. Meade; that he held the said policies as security for moneys advanced and to be advanced by him to them; that the period fixed for the certain repayment of said advances was the expiration of the tontine period of the first policy assigned to him. It was estimated by the parties that the advances made and to be made, with a certain rate of interest, would amount to $15,000 at the expiration of the tontine period; that when the tontine period arrived he was to collect the proceeds of said first policy, and repay himself the $15,000, and then reassign the second policy, No. 665,889, for $15,000 to Meade. We contend that this shows that the proceeds of the first policy are the primary fund out of which the payment of the advancements are to be made. The bill shows that the insurance company makes no contest as to either fund; that it has paid $15,000, the proceeds of the second policy into this court; that it has filed

its bill of interpleader in the California state court, tendering and offering to pay the proceeds thereof into court; that the proceeds of both policies are virtually in the hands of and under the control of Hubbard, and that the only question to be litigated and settled is as to whom he shall pay them out to and how. We contend that under the contracts set out in and exhibited with the bill that he should first pay himself such sums as he has advanced to the Meades out of the primary fund that he holds as security, to wit, the proceeds of the $20,000 policy; that the balance he should pay to Mrs. Meade or her successor in interest, Mrs. Cross, and that he should pay over the whole of the proceeds of the $15,000 policy to plaintiff as the legal representative of Meade, and the equitable owner thereof."

Now, if it be conceded—which, however, I do not decide—that the proceeds of the $20,000 policy were contemplated by the parties to the contracts hereinbefore mentioned as the primary fund out of which Hubbard should be paid, still complainant's argument is unsound, for the reason that Hubbard has not yet realized on that policy. Its payment is suspended, at the instance of the insurance company, by a bill of interpleader pending in the state court. If Hubbard should fail, without fault on his part, to realize on said policy, he could unquestionably, and according to complainant's own theory, resort to the $15,000 policy, since he holds both policies as collaterals. How is it possible to make a decree in the present suit fully covering these equities, when this court has no control whatever over the $20,000 policy or its proceeds? Taking the most favorable view of the case for complainant which the allegations of his bill will allow, Hubbard holds the policy sued on in the common-law action as collateral security for lawful advances made by him to the Meades, and it is his right and duty to forthwith collect the amount due on said policy, applying a sufficiency of the proceeds to the payment of his own debt, and holding the balance for the parties equitably entitled thereto. Should he fail to pay over such balance, said parties will then have adequate remedies against him. The demurrer will be sustained.