McDonnell v. Improvement District No. 145, Little Rock.

Opinion delivered January 23, 1911.

1.  Improvement districts—validity of organization.—The validity of the organization of a municipal improvement district is not affected by the fact that two prior petitions had been filed with the city council asking for the same improvement, but had been abandoned. (Page 337.)

2.  Same—street improvement—designation of material.—Kirby's Digest, § 5667, providing that the petition of a majority of the property owners within a proposed district "shall designate the nature of the improvements to be undertaken," does not require that the petition shall specify the kind of material to be used, which may be left to the discretion of the commissioners.   (Page 338.)

3.  Same—pavement of street—agreement as to material.—Where the petition of the property owners asking for the creation of an improvement district to pave certain streets expressly authorized the commissioners of the district to determine the kind of material to be used, the organization of the district will not be affected by proof that two property owners signed the petition upon a verbal promise or understanding that a certain material was to be used in the pavement of the streets.   (Page 339.)

4.  Same—who may serve as commissioner.—A member of the city council is not disqualified to serve as a commissioner of an improvement district within the city.   (Page 340.)

5.  Same—pavement of streets—establishment of grade.—Kirby's Digest, § 5672, providing with regard to municipal improvements that they "shall be made with reference to the grades of streets and alleys as fixed or may be fixed by the ordinances of said city," does not require that the street grades shall be fixed before the improvement district is created.   (Page 340.)

6.  Same—limit as to cost of improvement.—Kirby's Digest, § 5683, providing that "no single improvement shall be undertaken which alone will exceed in cost 20 per centum of the value of the real property in such district," etc., intended only to limit the amount which can be assessed against the real property in the district, and not to limit the total cost of the improvement where contributions from the city and county reduce the cost of the improvement within the specified percentage of the valuation of the realty within the district.   (Page 341.)

7.  Same—assessment of benefits.—When a corner lot fronts on one street already paved, it is not unreasonable to assume that the benefits to be derived from paving a side street will not accrue in the same proportion that they will to another lot fronting on the latter street.   (Page 342.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*J. W. Newman, Bradshaw, Rhoton & Helm* and *J. W. Blackwood* for appellants.

1.  Appellants are entitled to relief against the proposed cost of the improvement. It clearly exceeds 20 percentum of the value of the real property in the district as shown by the last assessment, in violation of the statute; and the fact that donations from the city and county are promised which may reduce the total amount to a sum within, or not in excess of, the 20 per cent. limit, does not legalize the proposed cost, because those promises are nonenforceable—the county and city are in no wise legally bound to make such donations. Kirby's Dig. § § 5683, 5643; 55 Ark. 150; 67 Ark. 31; 84 Ark. 258; 86 Ark. 1, 71 Ark. 8; 72 Ark. 195; 65 Ark. 565; 76 Ark. 308; 65 Ark. 532; 71 Ark. 561; 75 Ark. 542; 36 Ark. 330; Endlich on Con. Stat. § § 11, 23, 251; 143 Ill. 92; 18 L. R. A. 774; 183 Ill. 52; 61 N. E. 1042; 46 L. R. A. 193; 79 Miss. 754; 103 Mo. 431; 76 S. W. 497; 40 Atl. 637; 60 Atl. 894.

2.  The proceedings are void because no grade was established. Kirby's Dig. § 5672; 194 Ill. 521; 180 Ill. 124; 171 Ill. 253; 77 Ind. 92; 92 Ky. 89; 13 L. R. A. 666; 17 S. W. 212; 11 Ky. Law Rep. 892, 13 S. W. 361.

3.  The procedings are void because the kind of material was left in the alternative to the commissioners. 90 Ark. 39; 136 Cal. 88; 78 Ia. 235; 162 Ill. 383; 147 Ill. 327; 77 Ind. 92; 68 Mo. App. 483; 23 Ore. 123; 6 N. Y. 92; 164 Ill. 611; 82 Mo. App. 286; 40 N. E. 937; 106 Cal. 188; 47 Mo. 125; 140 Cal. 669; 134 Cal. 329.

4.  The assessment was discriminatory, not uniform, and made upon the wrong theory, in this, that three of the property owners, whose property had previously been included on one side in another improvement district, were given a low assessment, thereby increasing the proportionate burden of other owners in the district. Where assessors arbitrarily ignore elements that exist, they destroy the true measure of the benefits. Actual fraud is not necessary to set aside an assessment. A wrong theory of assessment will justify setting it aside, though no fraud be proved. 86 Ark. 15, 18, 19.

5.  The election of Cunningham as a commissioner was illegal.  Not only was he an interested party in getting up the district, but he was an alderman charged with the duty to sit in judgment upon the protests and appeals of property owners, and, as the record shows, elected as commissioner by his own vote.  2 L. R. A. 510; 2 Ore. 246; 126 N. C. 374; 78 Am. St. Rep. 666; 20 L. R. A. 838; 105 N. W. 969; 3 L R. A. (N. S.) 849; 23 Am. and Eng. Enc. of L. 268, and cases cited.

6.  The district should be set aside for the reason that three petitions were filed, no two of which are alike, and that two of the signers of the petition signed under the express understanding that the paving was to be of brick.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1.  Counsel for appellants err in their construction of the statute.  The limitation of 20 per centum of the value of the real property in the district has reference to the total cost of the improvement to the property owners, and is intended as a safeguard of their rights in that respect; but the total expense of the improvement may lawfully exceed 20 per cent. of the total value, if funds can be provided otherwise than by assessment of the property owners themselves, for the excess, as, in this case, by contributions from the city and county.  There is not only warrant of law for such contribution from both county and city, but it is also a duty imposed by law.  76 Ark. 22; Kirby's Dig. § 7351.  The city has power "to keep in order and repair streets." Kirby's Dig. § 5456.  See also 55 Ark. 159, 161.

2.  Cases cited by appellants in support of their contention that the proceedings are void because no grade was established, are not in point.  In the States from which cases are cited, the city council orders the improvement and assesses the cost of it against the property owners, and this method necessarily involves the features that the city council must exercise its discretion in ordering the improvement and set out in detail in its ordinance what shall enter into the work, materials, quantity of work to be done, and necessarily prescribing what the grade of the street shall be.  Here the improvement can only be ordered upon consent of the majority in value of the property owners of the district. For distinction between the laws of this and other

States on the subject, see Page & Jones on Taxation by Assessment, § 253. Our system results in the formation of a *quasi* public corporation. 71 Ark. 13; 81 Ark. 391; 86 Ark. 1.

The statute provides that "all such improvements shall be made with reference to the grade of streets and alleys as fixed, *or may be fixed by the ordinance of the city."* Kirby's Dig. § 5672. All that means is that the commissioners shall not make an improvement at some different grade from that established by the city, and that a grade must be established by the city before the work is done.

3. It was within the power of the property owners to delegate to the commissioners the selection of the particular kind of material, out of the various materials named in their petition, with which to do the paving. 55 Ark. 153; 59 Ark. 359; 71 Ark. 11; Kirby's Dig. § § 5718, 5719; 90 Ark. 37.

4. Cunningham's position as councilman and as commissioner of the district are not antagonistic. The latter position is not an office of profit. Kirby's Dig. § 5670. Neither his position as commissioner nor his office as councilman is an office within the meaning of the Constitution. 72 Ark. 180; *Id.* 230. And his selection was opposed to no principle of the common law. 22 Mich. 104; 46 Kan. 634; 62 How. Prac. 323.

5. There is no discrimination. The testimony of appellants' witnesses, even standing alone, raises no presumption that the assessments were not properly made and properly equalized.

McCULLOCH, C. J. Appellants owned real estate within the limits of an improvement district in the city of Little Rock, organized for the purpose of street paving, and they instituted this action in the chancery court of Pulaski County against said improvement district, attacking the validity of its organization and the assessments levied, and seeking to restrain further proceedings thereunder. Answer was filed and proof taken, and on final hearing of the cause the chancellor dismissed the complaint for want of equity.

1. The validity of the organization is challenged on the ground that three petitions were filed at different times covering the same territory. One petition was filed in September, 1908, but no ordinace was passed by the city council creating the district. Nothing was done under it, and it must be treated

as having been abandoned. Another petition was filed later, but nothing was done under that either. On June 28, 1908, a petition was filed, signed by the requisite number of property owners, and the. city council duly passed an ordinance creating the district, and within 90 days thereafter a second petition was presented by a majority in value of the property owners asking that the improvement be made.

We can not see that the presentation and abandonment of the former petitions had anything to do with the regularity or validity of the last petition, which was acted on by the city council. The fact that the first two efforts to form an improvement district proved abortive and were abandoned did not exhaust the rights of the property owners under the statute to proceed again to the organization of a district.

2. It is next contended that the organization is void because the petitions failed to contain the specification of the kind of paving material to be used, and left it to the commissioners to determine the particular kind to be used. The petitions specified that the improvement should be made "by grading, draining, construction of curbing and paving, and that the paving be done by construction of macadam, bithulithic, wooden blocks, brick, or asphaltum pavements, as the commissioners of said district to be hereinafter appointed may select as being most substantial and economical for the benefit of the district, and that the curbing be built of such material as the commissioners hereinafter appointed may determine."

The statute provides that the real estate of any city or town, or any district thereof, may be assessed "for the purpose of grading or otherwise improving streets and alleys, constructing sewers or making any local improvements of a public nature," and that "when any 10 owners of real property in any such city or incorporated town, or any portion thereof, shall petition the city or town council to take steps toward the making of any such local improvement, it shall be the duty of the council to at once lay off the whole city or town * * * or the portion thereof mentioned in the petition * * * into one or more improvement districts, designating the boundaries of such district so that it may be easily distinguished." Sections 5664, 5665, Kirby's Digest.

The statute further provides that if, within three months after publication of the ordinance creating the district, "a majority in value of the owners of real property within such district adjoining the locality to be affected shall present to the council a petition praying that such improvement be made, which petition shall designate the nature of the improvements to be undertaken, and that the cost thereof be assessed and charged upon the real property situated within such district or districts, the city council shall at once appoint three persons, owners of real property therein, who shall compose a board of improvement for the district." Sec. 5667, Kirby's Digest.

The board of commissioners is required by the statute to "form plans for the improvement within their district as prayed in the petition, and shall procure estimates for the cost thereof," and report same to the city council. Kirby's Digest, § § 5672, 5676.

The statute, it will be observed, does not require a specification in the petitions of the kind of material to be used. All that is required is that the nature of the improvement be specified in general terms, so that the purpose of the organization may be set forth in the proceedings. Much must, of course, be left to the discretion of the commissioners in forming the plans for the improvement and making the estimates of the cost thereof. *Fitzgerald* v. *Walker*, 55 Ark. 148; *Boles* v. *Kelly*, 90 Ark. 37.

The property owners may undoubtedly limit the powers of the commissioners in that respect by specifying with particularity the kind of material to be used and the cost of the improvement. *Watkins* v. *Griffith*, 59 Ark. 359. But when the petition of the property owners describes the character of the improvement only in general terms, or expressly leaves to the commissioners the decision as to what kind of material shall be used, the validity of the organization is not impaired thereby, and the commissioners may exercise the discretion thus left to them. Decisions in other States under different statutes are of no force here as precedents. The question must be determined in the light of the statutes on the subject.

It is also urged in this connection that two of the petitioners signed upon the express understanding and promise that the street was to be paved with brick. These two persons cannot

defeat the organization merely by showing that they signed the petition upon an understanding or promise that brick were to be used, when the petition plainly authorizes the commissioners to determine the kind of material to be used.

3.  The next objection is that one of the commissioners was a member of the city council when he was appointed. The fact that he was a member of the city council did not render him ineligible to service as a commissioner of the district. The duties of the two positions are not incompatible with each other, and the only qualification specified by statute is that the commissioners shall be owners of real property in the district.

4.  Another contention is that the proceedings are void because no street grade was fixed by ordinance before the district was created and the contract was let. The statute merely provides that "all such improvements shall be made with reference to the grades of streets and alleys as fixed or may be fixed by the ordinances of said city." Kirby's Digest, § 5672. It does not require that the grade shall be established before the district is formed or the plans made. On the contrary, it clearly contemplates that the grades may be established at any time when the improvement may be made in conformity therewith. It is time enough for the property owners to complain when the work is about to be done without reference to the establishment of a grade by the city.

5.  The statute limits the cost of the improvement to 20 per cent. of the value of the real property in the district as shown by the county assessments, and it is urged that the commissioners, in violation of that limitation, are about to undertake an improvement in excess of that percentage of the value in the district. It is shown by the evidence that 20 per cent. of the value of real property in the district, according to the county assessments on file, amounts to $94,000; that the estimated benefits to real property in the district amounts to $91,000; and that the total cost of the improvement will amount to $111,000. The estimated cost of the improvement submitted by the commissioners was $90,000, and the evidence also shows that the commissioners arranged with the county and city for contributions amounting in the aggregate to $33,000 in cash, which will reduce the net cost of the improvement to the district to $78,800.

It is insisted by appellants that the total cost of the improvement must be limited to 20 per cent. of the value of real property in the district, even though outside contributions from the city and county, or from other sources, be received which will reduce the cost to the district below the 20 per cent. limit. In other words, that an improvement cannot be undertaken which will cost more than 20 per cent. of the value of real property in the district, even though there be outside contributions which reduce the cost to that limit.

The statute reads as follows: "It shall be provided by ordinance that the local assessment of benefits shall be paid in successive annual installments, so that no local assessment shall in any one year exceed 25 per centum of the assessed benefits accruing to said real property. The ordinance shall fix the day in each year when the local assessments for the year shall be paid, and the day fixed for the payment of the first installment shall not be later than 60 days from the date of the ordinance making the local assessment; provided, no single improvement shall be undertaken which alone will exceed in cost 20 per centum of the value of the real property in such district as shown by the last county assessment." Sec. 5683, Kirby's Digest.

The limitation is repeated in another section authorizing a second levy of assessments when the first is insufficient to complete the improvement. It will be noted that these sections of the statute relate entirely to the matter of assessments, and the limitation is placed thereon as a protection to property owners against excessive assessments. It is obvious that the Legislature meant only to limit the amount which can be assessed against the real property in the district, and not to limit the total cost of the improvement when outside contributions reduce the cost to the specified percentage of the valuation of real property in the district. In that case the protection to property owners guaranteed by the statute is not violated.

That is the view which seems to have been taken by this court when considering the statute in *Fitzgerald* v. *Walker, supra,* where it is said: "The prohibition of the statute appears to be aimed, not so directly against the making of a contract as against any estimate or plan for an improvement requir-

ing a larger assessment than 20 per centum of the assessed value of the property. While the act clearly withholds the power to make an assessment exceeding that per centum, it does not expressly prohibit a contract for a greater amount nor declare that such a contract shall be void."

The purpose of the statute, as said by the court in *Kirst* v. *Street Imp. Dist.*, 86 Ark. 1, is to prevent improvement districts from undertaking work which will cost more than one-fifth of the assessed value of the property in the district at the time the work is undertaken, and if, before the work is completed, the first levy of assessments is found to be insufficient, and the limit of 20 per cent has not been reached, another levy may be made up to the limit. But the cost of the improvement is measured, within the meaning of the statute, by the amount which is to be assessed against the property of the district, and any additional cost to be paid by outside contributions is not to be included in fixing the limit, for the owners of property benefited by the additional contribution are not concerned in the additional cost, which does not burden their property.

It is not contended in this case that the assessments are about to be levied in excess of the 20 per centum limit, or that a contract is about to be let which will bind the property of the district in excess of the limitation. On the contrary, the facts disclosed in the record exclude all grounds for such contention. It is urged only that the county and city are not legally bound to make the promised contributions, and may not do so. Of course, if it were shown that the contributions will not be made, and that the expenditure of the amount raised by the assessments will be insufficient to complete the improvement, thus rendering the expenditure a futile waste without procuring corresponding benefits, then the property owners would have the right to complain and stop the useless expenditure of their money. But we do not think such a state of affairs is shown by the testimony. It is possible, of course, that the county court and the city council may, when the time comes to pay over the promised contributions, refuse to comply with the promises, but it is not sufficiently probable to justify a court of equity in stopping the work.

6. The remaining assault on the validity of the proceedings

relates to alleged inequality of assessments. This action was instituted within 30 days after the publication of the ordinance levying assessments, and is therefore in time for an attack on the validity of the assessments, but we are of the opinion that the evidence does not sustain the contention that the assessments are discriminatory, unequal and unjust. An attack is made on the assessment of the property of three owners, the contention being that they were favored by assessments too low and unequal to the assessments on the other property, including that of appellants. It is urged that the assessors, in estimating the benefits to these three pieces of property, arbitrarily took into consideration the fact that the property fronted on another street which had been paved at the cost of the property owners, and that the fact that the owners of this property had already paid assessments for paving the other street was taken into consideration as reducing the benefits to be derived from the street now to be paved. We are not prepared to say that such was not proper matter for consideration in assessing benefits which would depend largely upon the peculiar situation of the property in each case. When a corner lot fronts on one street already paved, it is not unreasonable to assume that the benefits to be derived from paving a side street will not accrue to this property in the same proportion that they will to another lot fronting entirely on that street. It cannot be said, as a matter of law, that the assessment is on the wrong theory when such matter is taken into consideration by the assessors. To hold otherwise would be to arbitrarily fix the ratio of benefits entirely on a front foot or valuation basis, and entirely ignore all other matters which might enter into the question of actual benefits, which, after all, is the end sought to be reached. Much, of course, must be left to the discretion and fair judgment of the assessors, and it is only abuses which courts of chancery will undertake to prevent.

We find nothing in the record which justifies us in declaring the proceedings illegal, so the decree is affirmed.

KIRBY, J., dissents.