AHERN *v.* PAVING IMPROVEMENT DISTRICT No. 53 OF
TEXARKANA.

Opinion delivered June 16, 1930.

*Jones & Jones,* for appellant.
*J. M. Carter* and *B. E. Carter,* for appellee.

SMITH, J. Appellant filed a complaint which contained the following allegations. Appellant owned certain town lots in Paving Improvement District No. 53 of the city of Texarkana, hereinafter referred to as the district. More than ten owners of property in the district filed with the city council on March 8, 1927, a petition praying the creation of the district, and an ordinance was passed designating the boundary lines of the district, it being recited in the ordinance that the district was created for the purpose of grading, curbing, guttering and paving the streets named in the ordinance. Appellant did not sign the petition upon which the ordinance was passed.

Thereafter the second or majority petition was circulated among the owners of real estate included in the district, but a majority in value had not signed when the petition was presented to appellant by Finis Pharr, who was then and is now a member of the city council. Appellant refused to sign the petition, for the reason that Fourteenth and Fifteenth streets, running west from Garland Avenue, which were included in the district, were not to be paved. Pharr represented to appellant and assured him that Fifteenth Street would be paved

if plaintiff would sign the petition, and similar representations were made to appellant by other members of the city council, and by property owners within the district. "That, relying upon said representations so made to him that Fifteenth Street would be paved west from Garland Avenue and believing that the promises and agreements made to him by members of the city council and by others that Fifteenth Street would be paved, he signed said petition, and would not have done so if such representations had not been made and relied upon."

He further alleged that after he had signed the petition, but before it had been filed, or presented to the city council, he was informed that it was not contemplated that Fourteenth or Fifteenth street would be paved, and thereupon filed his request in writing with the city council that he be permitted to withdraw his name from the majority petition. That, upon the presentation of this request, the council passed an ordinance instructing the assessors not to make an assessment of the betterments "until this matter had been perfected and reported back to the council," and J. P. Ahern (appellant) "is not to suffer any expense on account of the pavement of said streets mentioned above."

That, relying upon the representations of the council that no taxes would be levied upon his property until arrangements had been made and perfected to pave Fourteenth and Fifteenth streets, he permitted his name to remain on the majority petition. That an ordinance was passed and assessors elected, who assessed benefits against appellants property amounting to $7,283, and it was ordered that six per cent. of the betterments be paid annually on or before the 1st day of February of each year, commencing February 1, 1928, and pursuant to this ordinance appellant paid one annual assessment amounting to $436.98. That Fourteenth Street was paved, but the commissioners have failed and refused to pave Fifteenth Street, and have advised appellant

that they did not intend to pave it unless they are protected by an order of court in so doing. That appellant did not know, and was not informed, that the paving district had not paved, and did not intend to pave Fifteenth Street, until September, 1929, which was after he had paid his taxes for that year. It was further alleged that the commissioners of the district were, at the time of the filing of the complaint, engaged in the work of paving and grading the streets, and would not pave Fifteenth Street unless they were required to do so. There was a prayer that the commissioners be required to pave Fifteenth Street, or, if that relief was denied, that the district be restrained from collecting the taxes assessed against and levied upon appellant's property.

A demurrer, which was interposed to the complaint, was sustained, and this appeal is from this decree.

We think the demurrer was properly sustained. The power of the council to act is derived from the petition of a majority of the property owners. The law requires this petition to be in writing and to specify the improvement contemplated. The improvement district can only be created upon this petition, and must, of course, conform to it. The petition makes certain the improvement proposed, and all property owners have the right to rely upon the recitals of the petition; otherwise a property owner, by signing a petition for a particular improvement, might later learn that his consent to one improvement had been used to place the burden of a more extensive program upon other property owners as well as upon himself. What was said in the case of *Cox* v. *Road Imp. Dist. No. 8 of Lonoke County*, 118 Ark. 119, is applicable here. It was there said: "There is not, of course, the same necessity for accurate description of the roads which an improvement district embracing rural property is intended to improve as there is for an accurate description of streets in a town or city; but the legal principles which govern in one case must be applied in the other. It is essential

in both cases that there be no uncertainty about the improvement which it is proposed to make. All of the cases under our improvement district law treat the petition as jurisdictional, and hold that its recitals must meet the requirements of the statute. All of these decisions make it plain that there must be no uncertainty about the improvement proposed. The details and plans of the improvement may be worked out by the board of improvement after the establishment of the district petitioned for, but the discretion of the board is limited to carrying out the purpose of the petition. It is not contemplated that upon and after the establishment of the district there shall be any doubt about the improvement to be constructed. Otherwise, property owners might sign the petition under the apprehension that a certain road or street was to be improved, only to learn after the district had been established, and the plans had been approved, that they were mistaken or had been deceived. One of the purposes of requiring a petition in writing is to prevent such controversies. (Citing numerous cases)." Later cases to the same effect are: *Kempner* v. *Sanders,* 155 Ark. 321; *Nelson* v. *Nelson,* 154 Ark. 36; *Householder* v. *Harris,* 147 Ark. 349.

The law furnished appellant and all other property owners a certain source of information, upon which he and they might safely have relied, to-wit: the petition which he signed, and he had no right to assume that the council would order the construction of an improvement for which other property owners had not petitioned.

In the case of *Pharr* v. *Knox,* 145 Ark. 4, an improvement district, established by order of the county court, was attacked upon the ground—among others—that the plaintiff had signed the petition for the establishment of the district upon a representation of the county judge as to cost, which was false and fraudulent, and that the plaintiff had "relied on the statements of the county judge as a county official." A general demurrer was sustained to this complaint, and in

upholding that ruling it was there said. ''The alleged false and fraudulent representations, set up by one of the affiants, upon which signatures to the petition are said to have been obtained, were not statements of past or existing facts, and were not such fraudulent representations as entitled appellants to have the judgment creating the district declared invalid. The appellant had no right to rely upon such representations. The act itself 'provides an appropriate scheme for advising the landowners of the character of the improvements to be undertaken and the cost thereof, so that they could act upon the petitions intelligently.' *Lambersón* v. *Collins*, 123 Ark. 205. The act itself, if complied with, protects the property owners from such frauds as are set up in that affidavit. See § 2, *Luck* v. *Magnolia-McNeil Road Imp. Dist. No. 1 of Columbia County*, 141 Ark. 603.

Not only did the majority petition describe the streets to be improved, but the ordinance enacted pursuant to the petition also described the improvement, yet no attack was made upon this ordinance for nearly two years after its enactment, and under numerous decisions of this court this delay bars the attack here made. See also § 13 of act No. 64 of the Acts of 1929, vol. 1, Acts 1929, page 252.

The decree of the court sustaining the demurrer is correct, and it is therefore affirmed.