STREET IMPROVEMENT DISTRICT No. 1 *v.* COOPER.

4-9003                                         223 S. W. 2d 607

Opinion delivered October 10, 1949.

Rehearing denied November 7, 1949.

*Charles I. Evans, Jeptha A. Evans* and *W. L. Kincannon,* for appellant.

*Caviness & George,* for appellee.

MINOR W. MILLWEE, Justice. Appellants are commissioners of Street Improvement District No. 1 of Booneville, Arkansas, organized for the purpose of paving certain streets in that city. On petitions presented to the city council, it found that they contained more than 66 2/3% of the assessed value of the real property within the proposed district and passed an ordinance creating the district. This ordinance was passed January 5, 1948, and published on January 8, 1948.

Appellees are four landowners in the proposed district and signed the petition for its creation. On February 4, 1948, they, together with other owners in the proposed district, filed suit in chancery court challenging the validity of the district on various grounds. On February 27, 1948, appellants filed a motion to require the plaintiffs in that suit to make their complaint, and an amendment which had been filed thereto, more definite and certain. In response to this pleading, the plaintiffs filed an additional amendment to their complaint.

On March 12, 1948, appellants filed a demurrer to the complaint as amended for the reason that it did not state facts sufficient to constitute a cause of action. This demurrer was sustained on March 29, 1948, and plaintiffs declining to plead further, a decree was entered dismissing the cause. There was no appeal from this decree.

In the spring of 1949, a contract was made for the construction of the improvements and assessment of benefits made and filed. The ordinance levying the assessment of benefits was published April 26, 1949. On May 24, 1949, appellees filed the instant suit to restrain appellants from proceeding with the improvement and challenging the validity of the district on the grounds hereinafter discussed. The answer of appellants contains a general denial of some of the allegations of the complaint and pleas of *res judicata* and the thirty day statute of limitations as to other allegations.

On final hearing the chancellor found in favor of appellees on two issues: (1) That there had been no ordinance passed by the city council fixing the grade of streets to be improved; and (2) that the commissioners were without authority to omit the improvement of certain lands in the southwest part of the district belonging to Mrs. E. M. Elkins. The commissioners were enjoined from proceeding with the improvement until an ordinance fixing street grades was passed and were ordered to proceed with the assessment of the Elkins property. The complaint was dismissed as to other matters pleaded by appellees. Both sides have appealed.

## THE CROSS-APPEAL

■ Appellees' first contention is that the ordinance creating the district was void because of an error in publication thereof on January 8, 1948, and that the chancellor erred in refusing to so find. It is undisputed that the petitions and the ordinance as passed by the city council provide for paving on Bennett Avenue of two blocks 30 feet wide, one block 60 feet wide and the remaining six blocks 20 feet wide. The six blocks last mentioned are properly described as running from the "North line of Third Street to center line of Ninth Street." The ordinance as published makes the same provision as to the 30 and 60 foot paving but under the heading, "20 feet width pavement" lists the blocks to be paved on Bennett Avenue as running from the "North line of *Railroad Avenue* to center line of Ninth Street," which is the entire length of Bennett Avenue. Thus the 20 foot paving on Bennett Avenue was erroneously listed as beginning at the "North side of Railroad Avenue" instead of the "North side of Third Street" resulting in a duplication in description as to three blocks.

It is noted that the instant suit was begun more than a year after publication of the ordinance creating the district. Appellees were parties to the original suit in which a general demurrer was sustained and the cause dismissed. In that suit appellees filed a printed issue of the newspaper in which the ordinance was published as an exhibit to their complaint. The error was apparently clerical and the objection to the publication of the ordinance creating the district was a matter that could and should have been litigated in the former suit. An examination of the record shows that the pleading filed by plaintiffs in the original suit on March 3, 1948, was not an amended and substituted complaint as now urged by appellees, but was merely an amendment to the original complaint and that the court sustained appellants' general demurrer to the complaint as amended.

In *Tri-County Highway Improvement District* v. *Vincennes Bridge Co.*, 170 Ark. 22, 278 S. W. 627, this court approved the following statement by Chief Justice

WAITE, speaking for the court in *Alley* v. *Nott,* 111 U. S. 472, 4 S. Ct. 495, 28 L. Ed. 491: ''A demurrer to a complaint because it does not state facts sufficient to constitute a cause of action, is equivalent to a general demurrer to a declaration at common law, and raises an issue which, when tried, will finnally dispose of the case as stated in the complaint, on its merits, unless leave to amend or plead over is granted. The trial of such an issue is the trial of the cause as a cause, and not the settlement of a mere matter of form in proceeding. There can be no other trial except at the discretion of the court, and, if final judgment is entered on the demurrer, it will be a final determination of the rights of the parties which can be pleaded in bar to any other suit for the same cause of action.''

This court also held in *Stevens* v. *Shull,* 179 Ark. 766, 19 S. W. 2d 1018, 64 A. L. R. 1258 (Headnote 3): ''Where the validity of an improvement district was sustained by the chancellor's decree in a suit attacking the validity thereof, such decree operated as a bar to all grounds of attack in subsequent suits which might have been interposed in the first suit; though there may have been different plaintiffs in various suits.'' The reason for the rule is set out in the opinion to the effect that unless matters which might have been pleaded are barred by the decree, there would be no end to litigation until the money of the parties or the ingenuity of counsel for suggesting additional grounds for attack had been exhausted. Many other cases supporting this rule are collected in West's Arkansas Digest, Vol. 11, Judgment, Key No. § 713 (2). Since we conclude that appellants' plea of *res judicata* is well taken, it is unnecessary to decide whether appellees were also barred by the 30 day statute of limitations. (Ark. Stats., (1947), § 20-108.)

■ Appellees' next ground of attack on the validity of the district is that cost of the improvements exceeds forty per cent of the assessed value of the real property of the district. In organizing the district it was discovered that none of the public and charitable property

located in the district had been listed on the county assessment records as required by Ark. Stats., (1947), §§ 84-459 and 84-460. On November 4, 1947, the tax assessor filed a list of such exempt property with the county clerk. The estimated cost of the improvement was $158,780.52, and the assessed value of all real property in the district as certified by the county clerk was $417,462. Appellees offered testimony to show that the exempt property had been valued by the clerk at actual rather than assessed value and that, if the true assessed value had been made, the cost of the improvement would have exceeded forty per cent of the total assessed value of the real property of the district.

Ark. Stats., (1947), § 20-108, provides for a hearing on the petition to determine whether two-thirds in assessed value of the property owners have signed the petition and further provides that the finding of the city council shall be conclusive unless attacked by suit in chancery court within 30 days after publication of the ordinance. It is true that appellees did not know the estimated cost of the improvement before expiration of the 30 day period, but they had knowledge of the filing of the list of exempt property and assailed it in their first suit and further alleged that owners of the necessary 66 2/3 per cent of the assessed value of lands had not signed the petition. The city council necessarily had to find the total assessed valuation of lands in the district in order to determine whether owners of the requisite two-thirds in assessed value had signed the petition. This finding became conclusive under the plain terms of the statute unless attacked within 30 days after publication of the ordinance and the trial court correctly determined this issue.

■ Appellees' next ground of attack is that the district assessors followed the front foot rule in assessing benefits which resulted in said assessments being arbitrary and discriminatory and not on the basis of benefits actually received. Appellees offered testimony showing assessments on only three pieces of property. On two of these the assessments amounted to $4 per foot. One of these tracts was owned by appellee, A. F. Tiffin, who

testified there was a tract one block north of his property with the same area and footage on which the assessment of benefits was slightly more than one-half the assessment against his property.

The assessors testified that in making the assessments they considered each of the 578 tracts separately and took into consideration whether the property was business or residence property, vacant or improved, the distance of improvements from the pavement, the width of the pavement, the front footage and other factors bearing upon a fair and proper assessment.

The finding of the chancellor that the assessment was validly made and that the assessors did not follow the front foot rule is not against the preponderance of the evidence. *Stevens* v. *Shull, supra,* and cases there cited.

■ Appellees next attack the validity of the district because of the following provision of a contract entered into by the commissioners: ''The owner may, at any time before final completion of the work, by written notice, order additional work to be done, or any portion of work to be omitted or make any changes that may be deemed necessary or advisable.'' This is a separate ground of attack from that made with reference to omission of the Elkins property from the improvement which will be considered on the direct appeal. The mere making of the contract, though invalid, would not affect the validity of the district—at least until the commissioners actually propose to omit or do additional work under it. If and when this occurs, it will be time enough for the landowners to complain.

## THE DIRECT APPEAL

■ Appellants say that appellees failed to show that the city of Booneville had not fixed the grades of streets as required by Ark. Stats., (1947), § 20-301. The city clerk, who could not be termed a witness friendly to appellees, testified that the earlier ordinance records were in a shoddy condition. He had found no ordinance fixing street grades, but would not say whether or not such had

been enacted. Evans Digest of the ordinances of the city adopted in 1936 did not contain such ordinance, but it did not include special ordinances adopted in connection with improvement districts. A former mayor for eight years testified that he knew the ordinances of the city about as well as anyone and that no such ordinance had ever been enacted to his knowledge. While this testimony was necessarily negative in character, we cannot say that the chancellor's finding that no ordinance had been passed fixing the grade of streets to be improved is against the preponderance of the evidence. Section 20-301, *supra,* does not require that the grades shall be established before the district is formed or the plans made, but contemplates that such grades may be established at any time when the improvement may be made in conformity therewith. *McDonnell* v. *Improvement District,* 97 Ark. 334, 133 S. W. 1126. It follows that the chancellor correctly restrained appellants from proceeding with surfacing of the streets until such ordinance is passed.

■ Appellants next contend the trial court erred in the following finding: ''The Court finds and holds that it would be to the best interest of all the taxpayers in the improvement district to omit the unplatted land belonging to Mrs. E. M. Elkins in the southwest corner of the district from the improvement, but the Court is of opinion that the Commissioners are without authority to omit the proposed streets in the Elkins property from the improvement.''

It is undisputed that E. M. Elkins owned a ten acre unplatted tract in the southwest section of the district which he wanted to develop; that he took the commissioners to the property and agreed to dedicate the streets and he and his wife signed the first petition for the improvement. After the district was created including his property, Mr. Elkins died and his widow did not wish to dedicate the streets or have the improvement made. The commissioners decided to eliminate the property from the improvement. We agree with the chancellor's conclusion that the commissioners were without authority

to omit the Elkins property even though it may now be to the best interests of all that it be excluded.

In the recent case of *Calico* v. *Huntsville Paving Improvement Dist. No. 1,* 215 Ark. 569, 221 S. W. 2d 769, we said: "While the details of construction may be left to the judgment of the commissioners, it is essential that the petition describe with certainty the improvement proposed. The landowners, not the commissioners or the city council, must decide what streets are to be paved. *Less* v. *Improvement Dist. No. 1 of Hoxie,* 130 Ark. 44, 196 S. W. 464." See, also, *Ahren* v. *Paving Improvement Dist. No. 53 of Texarkana,* 181 Ark. 1020, 29 S. W. 2d 265. If the commissioners could leave out the Elkins property, they might decide to omit other property when other landowners in the district may have signed the petition with the understanding that such property was to be included.

The decree is affirmed on both direct and cross-appeal.