[Civ. No. 2398.   First Appellate District.—June 29, 1918.]

W. C. RAISCH, Appellant, v. REGENTS OF THE UNIVERSITY OF CALIFORNIA (a Corporation), Respondent.

STREET LAW—ASSESSMENT—STATE UNIVERSITY LAND.—Before land, a portion of which is actually in use by a state university for educational purposes, may be subjected to the lien of a street assessment, it must be separable from the remainder of the property for the public use of which it is a part without impairing the value of the property for the public use to which the occupied portions of it are already put.

ID.—STRIP OF LAND FORMING PART OF UNIVERSITY BLOCK—NONLIABILITY FOR STREET ASSESSMENT.—A strip of land fronting on a street and forming about one-seventh of a block owned by the state university, six-sevenths of which is occupied by college buildings, is not separable from the remainder without impairing its use, and therefore cannot be subjected to the lien of a street assessment.

ID.—ASSESSMENT WHOLLY VOID.—An assessment of a block of land belonging to the state university for street improvement is wholly void where six-sevenths of the block is occupied by college buildings.

ID.—ASSESSMENT OF NONASSESSABLE LAND—WAIVER AND ENFORCEMENT OF LIEN AGAINST OTHER LAND NOT PERMISSIBLE.—Where an assess-

ment of a block of land for street improvement was void, because six-sevenths of the land was occupied by college buildings of a state university devoted to public use, and therefore not subject to assessment, the contractor cannot waive his lien as to the six-sevenths and enforce it against the one-seventh.

ID.—INVALIDITY OF ASSESSMENT—FAILURE TO PROTEST TO COUNCIL—PROPERTY OWNER NOT ESTOPPED.—A property owner is not estopped from asserting the invalidity of a street assessment because he failed to protest to the city council or because he remained silent while the work was being done.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

C. H. Wilson, for Appellant.

Warren Olney, Jr., for Respondent.

BEASLY, J., *pro tem.*—The regents of the University of California were, on April 1, 1911, and still are, the owners of an irregular shaped block of land in the city and county of San Francisco, bounded by First Avenue, Parnassus Avenue, Kirkham, sometimes called K, Street, and Fourth Avenue, embracing about thirteen and one-half acres of land. Raisch, a street contractor, did street work, consisting of grading and sewer construction, on Fourth Avenue along the entire front of the university property, and also upon the intersections of that avenue with Kirkham Street and Parnassus Avenue. This work was done under a resolution of intention of the board of public works, providing for the assessment of its cost on property fronting on the improvement. Legal steps followed leading to an assessment for the cost of all this work. The entire tract of land belonging to the university was assessed to pay $3,681. The entire tract having been so assessed, the plaintiff in his amended complaint sought to foreclose not upon the whole of the university's property, but upon the Fourth Avenue frontage to a depth of 120 feet only.

The trial court sustained defendants' demurrer to the amended complaint, raising questions hereinafter discussed, and entered judgment for defendants when plaintiff refused to further amend. From that judgment the plaintiff appeals.

The plaintiff concedes that the assessment is void against all of the university property except that portion upon which he now seeks to foreclose.  The reason which exacts this concession from the plaintiff is that all of the block except that portion last referred to is used by the regents in the performance of their public functions; but the plaintiff contends that the strip fronting on Fourth Avenue to a depth of 120 feet is not so used by the regents, and that it, therefore, should be subjected to his lien as prayed.  The plaintiff attempted to frame his amended complaint so as to state a cause of action within the rule of *City Improvement Co.* v. *Regents,* 153 Cal. 776, [18 L. R. A. (N. S.) 451, 96 Pac. 801].  In that case the rule was stated to be that the regents, being a private corporation charged with the public trust of the general government and superintendence of the University of California, "private property held by them when actually devoted to public use is exempt from taxation for street improvement; otherwise not."  And it is said that "the principle is well established that where any such lands are not directly and necessarily used for a public purpose, they may be subjected to the payment of special assessments for benefits."  Much other learning is embodied *arguendo* in that opinion, which is by Mr. Justice Henshaw; but the above statement is the simplest and, as to the defendants' position, the most favorable statement of the rule to be found in the case.  An examination of the record in that case indicates that the property there assessed was an entire lot held and devoted, as therein alleged, solely to private uses of the defendants; that it was entirely vacant and unoccupied; not actually nor necessarily incidental nor appropriated to the performance of any public function, and not directly nor necessarily used for any public purpose.  Allegations to similar effect are embodied in plaintiff's complaint as to the property affected in this case; and plaintiff seems to concede that before land, a portion of which is actually in use by the university for educational purposes, may be subjected to the lien of an assessment for street improvement, it must be separable from the remainder of the property for the public use of which it is a part without impairing the value of the property for the public use to which the occupied portions of it are already put; for he has alleged that the 120 foot strip is not an indivisible portion of the block described in the assess-

ment, but, on the contrary, is easily divisible therefrom, and when severed will in no way affect the value or use of the remainder of said land for a public purpose or the performance of a public function.

It goes without saying that this allegation was necessary to a statement of a cause of action by plaintiff; for, if the land sought to be subjected to the assessment, and to be sold in a foreclosure proceeding to pay the same, is not divisible from the remainder of the tract without injuring it for the uses to which the university is devoting such remainder, then, of course, the portion sought to be severed is necessary to the use of the remainder of the tract.

Now, in the view we take of this matter, these bald allegations of this complaint, avowedly made for the express purpose of bringing the case within the rule of the case cited, cannot change the patent facts which appear on the face of the complaint itself. It is conceded in the brief of appellant that the whole eastern portion of this block—more than six-sevenths of its area—is occupied by the buildings of the Affiliated Colleges of the University of California. To allege under such circumstances that the other one-seventh of the area is severable and not necessary to the use of the remainder, considering the admitted character of the actual present use of almost the entire property, does not make it so. It is plain that the severance of this frontage on Fourth Avenue from the remainder of the property would necessarily impair the present as well as the future usefulness and value of the remainder of the block to the university for its public purposes; and the point of view from which this question must be examined is upon the assumption that the strip is to be sold to satisfy the lien, and thus severed from the remainder of the tract.

When the case of *City Street Improvement Co.* v. *Regents, supra,* was decided, the supreme court had before it no question of the division of a parcel of land upon which, and covering and using nearly all of which, as here, were buildings of the university. Upon this ground alone, then, the cases are distinguishable, and the demurrer was properly sustained.

There is, however, another ground upon which the trial court correctly sustained the demurrer.

It is, as indeed it must be, conceded by appellant, under *Witter* v. *Mission School District,* 121 Cal. 351, [66 Am. St.

Rep. 33, 53 Pac. 905], that the assessment as to the six-sevenths of this block in actual occupation—adopting counsel's construction of that term as meaning occupied by buildings in use for university purposes—was void. But the supreme court has gone further than this, and has held that where a street assessment covered too much land, the whole assessment was void; and in *Benson* v. *Bunting*, 141 Cal. 462, [75 Pac. 59], Mr. Justice McFarland stated the rule in this language: "Appellant contends that he should have been allowed the amount of an alleged street assessment against the land which assessment the court found to be void. (*Ryan* v. *Altschul*, 103 Cal. 177, [37 Pac. 339].) We do not see that the court erred in so holding. The assessment was against too much land, and therefore void; and it is unnecessary to consider respondent's contention as to the insufficiency of the engineer's certificate."

It is argued that in these cases the assessment was upon lands not only not assessable for the improvement, but belonging to other parties than owners of assessable lands; and that therefore those cases are distinguishable from the case at bar. We find nothing to indicate such a state of affairs in the case of *Benson* v. *Bunting*, 141 Cal. 462, [75 Pac. 59]; and, further, the supreme court applied the same rule in the case of *Parker* v. *Reay*, 76 Cal. 103, [18 Pac. 124], where an assessment for street work was levied against a lot known as lot No. 13, when it should have been levied against only the easterly half of that lot. This assessment also was declared void because it included too much land, and it does not therein appear that the assessable and nonassessable parts of lot 13 belonged to different parties.

Counsel for the appellant meets these cases with the contention that the basis of the assessment is the frontage only without relation to the depth of the lot; and hence the enforcement of a lien on the shallow frontage in this foreclosure suit does not injure the defendants, and that they may not complain, and depends for support of this contention upon the case of *Diggins* v. *Hartshorne*, 108 Cal. 154, [41 Pac. 283]. In the opinion in that case it is said that the owner cannot be said to be aggrieved merely because the superintendent, while correctly giving the frontage of his lot and assessing the proper amount thereto, has incorrectly delineated its interior lines, since the amount of the assessment is in no wise

affected thereby. And it is further said that the basis of the assessment is the frontage upon the work, and the frontage of each lot determines the amount of the assessment against a lot irrespective of its size, shape, or depth.

But the main question in that case was as to the proper location of Channel Street, in San Francisco. The court having settled the proper location of Channel Street, used the language above referred to. This language must be read in the light of the facts which were before the court. Those facts are thus stated in the opinion: "The appellant does not contend that if Channel Street is properly located on the diagram any other property than that designated therein is assessable. His contention in this respect is based upon his claim that Channel Street is erroneously located thereon. The precise distance from Berry Street at which Channel Street is laid down on the maps named in the statute has never been officially declared, and the different measurements given at the trial were reached by measurement with a scale. One of these distances was less and the others more than is shown upon the diagram. These discrepancies, however, do not of themselves invalidate the assessment. They are ascertained only by evidence outside of the assessment itself, and in such a case the assessment is not *felo de se,* but, if defective, is to be remedied upon an appeal."

It is apparent that all that the court intended to hold in that case was that if errors were made by the street superintendent in delineating the depth or lateral lines upon the assessment map, such errors were trivial, and could have been cured by an appeal to the supervisors. We undertake to say that the court did not mean that an assessment should be upheld in a case where, without mistake but intentionally, the assessment embraced a tract of land with a depth of approximately eight hundred feet, an area of thirteen and one-half acres, and of which only 120 feet in depth on one front could be legally assessed. That the court did not intend that the language referred to should be given the meaning attached to it by appellant is clear from the following statement from the opinion: "It is only the land assessed which is subject to the lien, and the judgment directing the sale, as well as the complaint for its foreclosure, must be limited to the description of the lot as found in the assessment."

Adopting further the language of *Diggins* v. *Hartshorne,* *supra,* as applicable to this case (in which we think he is mistaken), counsel contends that the basis of the assessment here is the frontage upon the work; that the frontage of each lot determines the amount of the assessment against that lot irrespective of its size, shape, and depth. Viewed from the standpoint of the state of this proceeding at the present time there seems to be much force in this argument, for this is a front-foot proceeding, and such is the rule as to the method of levying assessments in front-foot proceedings. Nevertheless, the statement is not correct in the sense that the frontage was all that the board of public works was permitted to consider when the proceeding was instituted and the method of assessment determined. To so hold would be to lose sight of the relative cost of the improvement compared to the value of this property, and of the legal principle that the assessment must not be confiscatory, and that fundamentally, in all cases of assessments for local improvements, the taxing powers must not levy a tax that will be so disproportionate to the value of the property to be subjected thereto as to deprive the owner of his property without due process of law. The board of public works, at the inception of this proceeding, and while considering the method to be adopted for raising the money with which to do this work, had the right, if it was not their duty, to consider the value of the taxable portions of the property assessable for the work. The board of public works had at least two distinct methods provided by law for raising this money. It could, as it attempted to do here, levy the assessment upon the frontage; but it was also provided by an amendment to the charter of the city and county of San Francisco, adopted in 1910 (Stats. 1911, p. 1691, art. VI, c. II, sec. 33), that the city might proceed with street improvements under the general street law of the state, which at that time included the Vrooman Act, [Stats. 1885, p. 148], section 3 of which then authorized street improvement under what is known by the common name of the district plan. In that section of the Vrooman Act it is provided that whenever, according to the estimates of the engineer, the total estimated cost and expenses of a street improvement will exceed one-half of the total assessed value of the lots and lands assessed, if assessed, as here, upon the frontage, according to the last assessment-roll of the city, the district plan must be

adopted. While the city was not bound under the charter, as a municipality organized under the General Municipal Incorporation Act [Stats. 1883, p. 93] would have been, to follow this district plan in such a contingency, nevertheless it might have done so, provided the cost would exceed one-half the assessed value of that portion of the property assessable and fronting on the street. It must be clear from this that the city and county at the beginning of this proceeding were permitted to take into consideration not only the extent of the frontage, but also the value of the property back of the frontage; and where, as here, the value of the 120 foot strip does not appear, we are not called upon to assume, in order to reverse this judgment, that the board of public works would not have been warranted, and would not, under the circumstances that existed here, have adopted the district plan had its attention been called to the fact that its assessment against the six-sevenths of the property on which the buildings stand was void.

Counsel contends that plaintiff has the right, by waiving his lien to the remainder of the property—as he expressly undertakes to do by an allegation of his complaint—to foreclose against the 120 foot strip. We think this contention unsound, for the reason that the appellant in this case is waiving nothing, even in his own view of the case, by foregoing a right to foreclose upon the six-sevenths of this property upon which he confessedly can have no lien, and which admittedly was not subject to this assessment. What is really being attempted is to collect by this indirect method an invalid assessment which the board of public works evidently thought would be of benefit to the entire property of the Affiliated Colleges, and the cost of which they assumed would be levied upon that entire property measured by its frontage on Fourth Avenue. They were mistaken in this; and had they known of their mistake it is not possible to say at this time that they could have levied this assessment at all. What is really asked of the court here is to make a new assessment for this street contractor, or that he be permitted to make a new one for himself, which the respondents in this case will have no opportunity to protest. While they were not called upon to protest the actual assessment in order to protect their rights in the courts, they had, nevertheless, the right to do so, and they cannot now be compelled by the court to face,

without the power to protest, a new assessment entirely different, so far as the property is concerned, from the assessment actually levied.

At the oral argument appellant's counsel contended that the "equities" of the case were all with appellant; that the respondents had stood by and permitted the appellant to expend his money on improvements in front of respondents' property without protest or objection, and should not now be heard to question the legality of the assessment. There is nothing in the complaint in this action to sustain this contention. It does not appear from the complaint that no protest was made, or that no objection was offered; and, further, in the case of *Barber Asphalt Paving Co.* v. *Jurgens,* 170 Cal. 273, [149 Pac. 560], the supreme court held that a property owner is not estopped from asserting the invalidity of an assessment because of his failure to protest to the city council, or because he remained silent while the work was being done. The principle there enunciated applies to this case. City officials when levying assessments act constantly under the advice of their attorneys; and the language of the case last cited to the effect that the presumption of knowledge of the previous acceptance of the street, and consequent invalidity of the assessment, did not attach to the property owner with any greater strength than it applied to the city or the contractor, is an apt response to the contention of counsel that the regents should be estopped from asserting the invalidity of this assessment if they remained silent while the work was being done.

We feel, in conclusion, that the language of the late Judge Scawell when he sustained the demurrer is appropriate in this case. He said: "I do not understand upon what theory the plaintiff can expect to have the lien enforced over this limited area, the assessment covering a much larger one."

The judgment is affirmed.

Kerrigan, J., and Zook, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 26, 1918.