[Civ. No. 3352. Third Appellate District.—April 19, 1928.]

RECLAMATION DISTRICT No. 684, Petitioner, v. EAST BAY MUNICIPAL UTILITY DISTRICT, Respondent.

Case & Forslund for Petitioner.

T. P. Wittschen, L. W. Irving and Harold Raines for Respondent.

PULLEN, J., *pro tem.*—The East Bay Municipal Utility District comprises nine cities on the easterly side of San

Francisco Bay, and was organized to perform certain municipal functions, one of which was to bring a publicly owned water supply from the Mokelumne River in Amador County to the Utility District for the use of the District and its inhabitants.

It was founded pursuant to the provisions of the Municipal Utility District Act (Stats. 1921, p. 245), and it is conceded by the parties to this proceeding that it is a public agency.

The Utility District has lands within Reclamation District No. 684, upon which its pipe, conduits and other works are constructed for the purpose of conveying water to the East Bay cities.

Long prior to the acquisition of the lands above mentioned by the Utility District in Reclamation District No. 684, the District was organized and was existing by virtue of certain reclamation district laws of the state of California. It embraced within its exterior boundaries approximately ten thousand acres, all lying from six to fourteen feet below the level of the waters flowing in the adjacent San Joaquin River and its tributaries. The lands within the District were formerly what is known as swamp and overflowed lands consisting of vast wastes of tule and other water grasses. Owing to its elevation with reference to the adjacent water, levees were constructed and are maintained at great expense and by reason of the rainfall, surface and irrigation waters, it is necessary to maintain drainage canals and pumps to conduct the surplus waters off of the lands and back into the river.

To obtain funds necessary to protect the lands within the District, assessments are duly and lawfully levied upon such lands pursuant to law, and it will be necessary to continue to do so in the future.

After the Utility District acquired the land within the District, and while still the owner thereof, an assessment in proportion to the benefits was levied by the Reclamation District and spread upon all lands in the Reclamation District, including those of the Utility District.

A claim for its proportion of this amount was presented to the board of directors of the Utility District and payment refused; thereafter this action was brought to compel by writ of mandate the allowance of the claim of the Reclamation District by the Utility District.

To the petition of the Reclamation District the Utility District filed both a demurrer and answer, which by its terms admits practically all of the allegations of the petition, except the allegations to the effect that without the reclamation works maintained by the District the lands would be useless for the purposes for which the Utility District seeks to use its right of way; and while traversing this allegation, it is admitted that the reclamation has benefited the Utility District, in that it can more cheaply and conveniently maintain its work under existing conditions than the same could be maintained if the lands were permitted to revert to their natural condition.

The only issue here raised is to the validity of the assessment as applied to the lands of the Utility District, the District contending that its property being actually used for a public purpose is exempt from such assessment as here attempted to be levied.

Respondent contends that it is the general rule of the state to exempt publicly owned property from taxation, and that being true the general principles, which exempt publicly owned property from taxation, also exempt the same from an assessment, where the property is actually being put to use by the public body for a public use.

The constitution of 1849 contained no express exemption of public property from general taxation, but by judicial construction it early became a recognized principle of taxation. The constitution provided: "Taxation shall be equal and uniform throughout the state. All property in this state shall be taxed . . . " etc. The supreme court, through Mr. Justice Rhodes, said in the case of *People* v. *McCreery*, 34 Cal. 43, in construing this section: "The meaning of taxation must be kept in view, and that is: a charge levied by the sovereign power upon the property of its subject. It is not a charge upon its own property, nor upon property over which it has no dominion. This excludes the property of the State, . . . "

In the constitution of 1879, section 1, article XIII, provided: "All property in the state . . . shall be taxed . . . provided that . . . property used exclusively for public schools and such as may belong to the United States, this state, or to any county or municipal corporation within this state, shall be exempt from taxation."

Thus stood the law in 1913 when the city of San Francisco filed a petition for a writ of mandate to compel certain officers of the county of Tuolumne to cancel an assessment for taxes levied by Tuolumne County upon certain property belonging to the city of San Francisco, lying in the county of Tuolumne, the property having been acquired for the purpose of constructing and operating a municipal water-works and supply for the benefit of the city of San Francisco and the inhabitants thereof. Upon the hearing of said writ, the trial court directed that the writ issue, and in affirming the order this court held in *San Francisco* v. *McGovern*, 28 Cal. App. 491 [152 Pac. 980], that the constitutional provision exempting municipally owned property was plain and unambiguous and therefore was not subject to judicial interpretation.

To remedy this apparent injustice, section 1 of article XIII was amended in 1914, by adding the following:

''All property in the state except as otherwise in this Constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided. The word 'property,' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal and mixed, capable of private ownership; provided, that a mortgage, deed of trust, contract, or other obligation by which a debt is secured when land is pledged as security for the payment thereof, together with the money represented by such debt, shall not be considered property subject to taxation; and further provided, that property used for free public libraries and free museums, growing crops, property used exclusively for public schools, and such as may belong to the United States, this state, or to any county, city and county, or municipal corporation within this state shall be exempt from taxation, except such lands and the improvements thereon located outside of the county, city and county, or municipal corporation owning the same as were subject to taxation at the time of the acquisition of the same by said county, city and county, or municipal corporation; provided, that no improvements of any character whatever constructed by any county, city and county, or municipal corporation shall be subject to

taxation. All lands or improvements thereon, belonging to any county, city and county, or municipal corporation, not exempt from taxation, shall be assessed by the assessor of the county, city and county, or municipal corporation in which said lands or improvements are located, and said assessment shall be subject to review, equalization and adjustment by the State Board of Equalization. The Legislature may provide, except in case of credits secured by mortgage or trust deed, for a deduction from credits of debts due to *bona fide* residents of this state.''

It will be noted that the proviso relates only to taxation, and upon examination of the constitution we find no provision pertaining to assessments, as distinguished from taxation, although such distinction has long been clearly and definitely pointed out. In an early California case *Taylor* v. *Palmer*, 31 Cal. 241, the court said:

''It is not a power to tax all the property within the corporation for general purposes, but the power to tax specific property for a specific purpose. It is not a power to tax property generally founded upon the benefits supposed to be derived from the organization of a government for the protection of life, liberty, and property, but a power to tax specific property founded upon the benefits supposed to be derived by the property itself from the expenditure of the tax in its immediate vicinity.''

This court having before it the plain distinction pointed out in the many opinions of the courts of California, and the appropriate use of the words ''taxation'' and ''assessments,'' as used by the legislature itself in the various laws it had enacted pertaining to those respective subjects, we cannot say that it deliberately and intentionally omitted assessment from the exceptions contained in section 1 of article XIII of the constitution, and the judicial branch cannot read into the law what the legislative branch has, apparently, purposely and deliberately omitted.

It is true that our cities have grown in population and that questions of acquiring property for water supply, sewage disposal, light and power, playgrounds, cemetery sites, and airplane fields are becoming increasingly prominent, and as time goes on, the development of these municipal interests, as well as others, will tend more and more to cause cities to seek beyond the confines of their corporate limits for such

benefits, but such questions must be addressed to the legislature and not to the courts.

Petitioner recognizes that the Utility District here affected is a public corporation engaged in a municipal function, and that there is no direct constitutional provision in point, but it attempts to distinguish the cases relating to the question, upon the ground that if a special assessment is levied for the improvement of property the public agency is not liable, but if for the actual preservation of the property it is liable, and attempts to establish as the rule of law that publicly owned and used property is exempt from assessment where the assessment benefits the entire public and not alone the particular public entity that owns the property.

We do not believe that such a rule can be formulated, or that the cases bear out such conclusion as petitioner contends.

■ The question seems to be whether or not the property of the governmental agency is actually devoted to a public use; if so, it is exempt, otherwise not. Perhaps the leading case announcing this principle is that of *City of San Diego* v. *Linda Vista Irrigation Dist.*, 108 Cal. 189 [41 Pac. 291], decided in 1895, and several years prior to the amendment of section 1 of article XIII of the constitution. That was a case where the city of San Diego owned certain public lands. These were included within an irrigation district. The question before the court was the liability of the lands of the city to pay the irrigation district assessments. The complaint described the nature of the lands and alleged the facts that they were not used for any public purpose but were "dry, vacant, unoccupied and uncultivated agricultural lands." In the course of its opinion the court pointed out that the assessment of the irrigation district was not a tax, that the city could not claim exemption by virtue of the provisions of section 1 of article XIII; that, on the contrary, section 1 of article XIII dealt with exemption from taxation and had no application to an assessment which was for the immediate benefit of the property. After citing cases showing the difference between a tax and an assessment, the court concluded that the lands in question not being held for any public or municipal purpose, were liable to assessment.

The next case which arose was *Witter* v. *Mission School Dist.*, 121 Cal. 350 [66 Am. St. Rep. 33, 53 Pac. 905], decided in 1898, also long prior to the constitutional amend-

ment referred to. This was a case of a street assessment. The complaint did not specifically allege that the property which it was sought to subject to the lien of the assessment was not used for public purposes. After discussing the Linda Vista case and pointing out the difference between a tax and an assessment, the court said:

"So far as shown the lots in question may have school buildings upon them and may be used and occupied exclusively for school purposes, in which case we do not think this action could be maintained. As a private owner, however, of land not used exclusively for school purposes, but held as an investment or from which to derive rentals, as property of an individual is held and owned, we see no reason why the lands of a school district should not be assessed for improvements the same as those of any other private owner. But we think, as land belonging to school districts is liable for such assessments only when it is not used for school purposes, the complaint should allege the facts necessary to bring the case within the exception."

Accordingly, because of the fact that it did not clearly appear in the complaint that the land was not used for public school purposes the ruling of the court below sustaining the demurrer to the complaint was affirmed.

The next case to consider the question is *City Street Imp. Co.* v. *Regents of University of Cal.*, 153 Cal. 776 [18 L. R. A. (N. S.) 451, 96 Pac. 901], decided in 1908, and several years prior to the constitutional amendment before referred to. It was sought in this case to impress a street assessment lien against certain real property, the legal title to which stood in the name of the Regents of the State University. The court, through Mr. Justice Henshaw, in the course of its opinion, cited with approval the cases of *San Diego* v. *Linda Vista Irr. Dist., supra,* and *Witter* v. *Mission School Dist., supra,* and reaffirmed the rule of those cases, and held that the complaint stated a cause of action because the property in question was not used for any public purpose.

Subsequently in the case of *Raisch* v. *Regents of the U. of C.*, 37 Cal. App. 697 [174 Pac. 943], and upon the authority of the cases above cited it was held that the complaint failed to state a cause of action, and that the land in question being used in part for a public purpose was not subject to assessment.

150

The latest case on the subject is *City of Fresno* v. *Fresno Irr. Dist.*, 72 Cal. App. 503 [237 Pac. 772]. The city of Fresno owned a sewer farm, which was outside the limits of the city and within the boundaries of the Fresno Irrigation District. Upon this land the defendant irrigation district levied an assessment for irrigation district purposes and was about to sell the property of the city to satisfy the lien of that assessment. The action was brought to enjoin such sale and to quiet the title of plaintiff to the lands in question. After reviewing the previous cases, the court said, quoting from the case of *City Street Imp. Co.* v. *Regents, supra:* ''The rule in this state is, as above indicated, that such property when actually devoted to the public use is exempt; otherwise not.''

 The above authorities appear decisive on the question and it is ordered that the writ of mandate commanding the Utility District to pay to the proper authorities an amount sufficient to discharge the assessment levied by the Reclamation District be hereby denied.

Hart, J., and Finch, P. J., concurred.

An application by petitioner to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 18, 1928.

All the Justices present concurred.