[Civ. No. 10578.  Second Appellate District, Division One.—February 25, 1936.]

THE PEOPLE ex rel. T. A. MOODY, Appellant, v. WILLIAM H. CARTER, Respondent.

U. S. Webb, Attorney-General, Leon French, Deputy Attorney-General, and Smith & Dunn for Appellant.

Boyd C. Barrington, City Attorney (Santa Monica), and Robert N. Baker, Assistant City Attorney, for Respondent.

ROTH, J., *pro tem.*—Carter is the mayor and commissioner of public safety in the city of Santa Monica. During his incumbency of those positions the City Council of Santa Monica, composed of Carter and two others, elected Carter (Carter not voting) as the representative of Santa Monica to the directorate of the Metropolitan Water District. (Metropolitan Water District Act; Deering's General Laws, 1931, Act 9129.)

This action is one in *quo warranto,* and is in three counts. It is brought for the purpose of removing Carter from the board of the Metropolitan Water District for the following reasons, each being the gravamen of a separate cause of action: 1. That the appointment of Carter was improperly made because it was not made by the chief executive officer of Santa Monica, as required by section 6 of the Metropolitan Water District Act. 2. That Carter was ineligible for such appointment because he was a member of the council which appointed him to the Metropolitan Water Board. 3. That he was not eligible for the appointment because the city charter required him to give all of his time to his charter duties and that he could not do so and act as a director of the Metropolitan Water District.

A demurrer to the complaint and each of its causes of action was sustained without leave to amend, and from the judgment entered on said order this appeal was taken. The pertinent portion of section 6 of the Metropolitan Water District Act, which is applicable here, is as follows: "All powers, privileges and duties vested in or imposed upon any district incorporated hereunder shall be exercised and performed by and through a board of directors; provided, however, that the exercise of any and all executive, administrative and ministerial powers may be by said board of directors delegated and redelegated to any of the offices created hereby or by the board of directors acting hereunder.

"The board of directors herein referred to shall consist of at least one representative from each municipality, the area of which shall lie within the Metropolitan Water District. Such representatives shall serve without compensation from the district and shall be designated and appointed by the *chief executive officers of municipalities,* respectively, with the consent and approval of the governing bodies of the municipalities, respectively. . . . " (Italics ours.)

Santa Monica has a commission form of government. The commission is made up of three commissioners, each being completely in charge of his department. The powers and duties of each are defined by the city charter and the three together compose the city council. The charter, article III, section 3, provides: "Section 3. The Commissioner of the Department of Public Safety shall be *ex officio* Mayor of the City, Chief of Police, Superintendent of Buildings, Health Officer and Fire Commissioner, and he shall perform the duties of said officers, as provided by law. . . . " It also provides (art. V, sec. 1): "The Mayor is the executive officer of the corporation and must exercise a careful supervision over all its affairs. . . . " Article IV, section 2, of the charter provides that, "The said city council is the governing body of the city . . . ", and among the powers granted to the council by article II, section 14, are: "To create offices and provide for the election or appointment of officers other than those established by this charter, or by general law." Other than what is said in article V, section 1, about the mayor being the executive officer, the charter is silent upon the subject of the duties of the mayor, except that he "must exercise a careful supervision over all of its [the city's] affairs". Nowhere in the charter is the mayor given power to make any appointments. Under such circumstances we are of the opinion that the language of section 6 heretofore excerpted from the Metropolitan Water District Act is not violated because the appointment in this case was made by the city council instead of the mayor. The italicized language of section 6 which we have quoted contemplates that in some municipalities the executive officers may be plural and not singular. It is true, however, that this is not the sole construction which can be placed upon said language, since it may be argued that the phrase "executive officers" is used in a plural sense because of the plurality of the word "municipalities" which it modifies. We therefore do not rest the decision upon this point alone. If the language is susceptible of a singular construction alone, which is the contention of appellant, then there is a conflict between the provisions of the Metropolitan Water District Act and the provisions of the city charter. When there is such a conflict, the provisions of the charter must prevail. As said in the case of *Ex parte Braun,* 141 Cal. 204 [74 Pac. 780]: " . . . it has

always been conceded by all the justices that the object of the amendment [the Municipal Affairs clause in the Constitution] was to secure to the municipality that had, under the provisions of the Constitution, adopted a charter for its own government, the maintenance of its charter provisions in municipal matters, and to deprive the Legislature of the power, by laws general in form, to interfere in the government and management of the municipality." In the case of *Bank* v. *Bell*, 62 Cal. App. 320, at page 329 [217 Pac. 538], the court says: "The powers of the cities are not derived from the legislature, but from a freeholders' charter directly provided for by the constitution. The city in its charter may make and enforce all laws and regulations in respect to municipal affairs subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by the general laws. The powers of the city are all-embracing, restricted and limited by the charter only and free from the interference of the state by general laws. The result is that the city has become independent of general laws upon municipal affairs. Upon such affairs a general law is of no force. If its charter gives it powers concerning them, it has those powers. If its charter is silent as to any such power, no general law can confer it. As to municipal affairs the charter, instead of being a grant of power, is, in effect, a limitation of powers. The city can exercise the power if the charter does not prohibit it." To the same effect are: *City of Los Angeles* v. *Central Trust Co.*, 173 Cal. 323 [159 Pac. 1169]; *City of Pasadena* v. *Charleville*, 215 Cal. 384 [10 Pac. (2d) 745]; *Storke* v. *City of Santa Barbara*, 76 Cal. App. 40 [244 Pac. 158]; *Jackson* v. *Wilde*, 52 Cal. App. 259 [198 Pac. 822]; *Fragley* v. *Phelan*, 126 Cal. 383 [58 Pac. 923]; *Rothschild* v. *Bantel*, 125 Cal. 5, 7 [91 Pac. 803]; *Reclamation District* v. *East Bay District*, 91 Cal. App. 143 [266 Pac. 969]; *Raisch* v. *Regents*, 37 Cal. App. 697 [174 Pac. 943]; *Inglewood* v. *County of Los Angeles*, 207 Cal. 697 [280 Pac. 360]; *American Co.* v. *City of Lakeport*, 220 Cal. 548 [32 Pac. (2d) 622].

There is authority also to sustain the view that the language of section 6 is directory and not mandatory. (*People* v. *San Bernardino High School District*, 62 Cal. App. 67 [216 Pac. 959]; *Perry* v. *Gross*, 172 Cal. 468 [156 Pac. 1031]; *Cake*

v. *City of Los Angeles,* 164 Cal. 705 [130 Pac. 723]; *Derby & Co.* v. *Modesto,* 104 Cal. 515 [38 Pac. 900]; *Board of Education* v. *Board of Trustees,* 96 Cal. 42 [30 Pac. 838].) In the case of *People* v. *San Bernardino High School District, supra,* the court says, "'Shall' or 'must' are frequently construed as directory terms. Whenever the text of a statute and the intent of the legislature as a body, as gathered either from the particular statute under consideration, or from it in connection with other related statutes, show that the real meaning of the legislature was that apparently mandatory words shall be given a directory meaning, they will be given such a construction." We conclude that the first cause of action did not and could not be amended so as to state a cause of action.

The criticism of the second cause of action is squarely answered, on almost identical facts, by the case of *McDonnell* v. *Improvement District,* 97 Ark. 334 [133 S. W. 1126]. In the foregoing case, one Cunningham was a member of the city council which appointed him as one of three persons to compose the board of improvement for the district. The eligibility of Cunningham to act on the board was attacked squarely on the ground that the city council could not appoint one of its own members to the board. With reference to this situation the court, in the McDonnell case, said: "The next objection is that one of the commissioners was a member of the city council when he was appointed. The fact that he was a member of the city council did not render him ineligible to service as a commissioner of the district. The duties of the two positions are not incompatible with each other, and the only qualification specified by statute is that the commissioners shall be owners of real property in the district." (See, also, *People* v. *Provines,* 34 Cal. 520; *Niles* v. *Muzzy,* 33 Mich. 61 [20 Am. Rep. 670]; *Ex parte Dailey,* 93 Tex. Crim. Rep. 68, 69 [246 S. W. 91, 26 A. L. R. 138].) The case of *Abbott* v. *McNutt,* 218 Cal. 225 [22 Pac. (2d) 510, 89 A. L. R. 1109], is not inconsistent with the foregoing authorities. That case merely decides that judges who were by provisions of a county charter made members of an election board, were, if they acted as members of such board, public officers, and as such were vested with nonjudicial and extrajudicial functions, which is contrary to our constitutional principle that the government is divided into three branches.

We conclude, therefore, with reference to plaintiff's second cause of action, that there is nothing in the two positions which makes them so incompatible as to disqualify respondent from accepting an appointment on the board of directors of the Metropolitan Water District.

■ The third cause of action is predicated upon article III, section 2, of the charter, the pertinent portion of which is as follows: " . . . Each commissioner shall receive a salary of Three Thousand ($3000) Dollars per annum, payable in equal monthly installments at the end of each and every calendar month, and *each commissioner shall devote his whole time and attention to the duties of his office.* . . . " (Italics ours.) This provision of the charter, however, cannot affect respondent's right to serve on the board of the Metropolitan Water District. There is nothing in the act creating the Metropolitan Water District which disqualifies respondent from acting as a member of its board because he may occupy some official capacity in the city which he represents or because he may be under obligation to such municipality to devote all of his time and energy to the affairs of that municipality.

The judgment is affirmed.

York, Acting P. J., and Doran, J., concurred.