[Civ. No. 13408.   First Dist., Div. One.   Feb. 5, 1947.]

CITY OF BERKELEY et al., Petitioners, v. MABEL W. JENSEN, as Auditor, etc., Respondent.

, Fred C. Hutchinson, City Attorney, and Hagar, Crosby & Crosby for Petitioners.

Redmond C. Staats and Redmond C. Staats, Jr., for Respondent.

PETERS, P. J.—This is a petition for a writ of mandate to compel the auditor of the city of Berkeley to issue her warrant for the payment of a designated sum of money to the East Bay Municipal Utility District for fire hydrant rental for the month of December, 1946. There is no dispute concerning the intrinsic validity of the claim, but respondent places her refusal to issue the warrant on the sole ground that the approval of the claim by City Manager Fitch Robertson, which approval is required by the Berkeley charter (§ 61), was invalid because the appointment of Robertson as city manager was illegal, being, so it is charged, in violation of certain charter provisions. The sole issue presented relates to the validity of the appointment of Robertson as city manager.

The facts are alleged in the petition and admitted by the demurrer of respondent. Robertson was elected mayor of Berkeley for a four-year term commencing July 1, 1943, and terminating June 30, 1947. Under the charter provisions then and now in effect the mayor is a member of the city council, is the president of that body (Charter, § 39) and has the right to vote on all matters coming before the council (Charter, § 21). When Robertson assumed the duties of mayor on July 1, 1943, one Fisk was city manager serving at a salary fixed by the council of $7,500 *per annum*. In June of 1944 Fisk resigned and Vander Ende was appointed city manager by the council of which Robertson was then a member, to serve at a salary fixed by the council of $8,500 *per annum*. On July 1, 1945, the council of which Robertson was then a member increased the salary of Vander Ende as city manager to $10,000 *per annum*. In December, 1946, Vander Ende resigned at city manager, such resignation to be effective January 15, 1947. This resignation was accepted by the council on December 17, 1946, and on December 20, 1946, by formal

resolution the council of which Robertson was then a member appointed Robertson city manager to take office January 16, 1947, at an annual salary of $9,000. On January 14, 1947, the council, Robertson still being a member, by formal resolution rescinded its resolution appointing Robertson city manager. This resolution of rescission was apparently adopted to avoid the legal effect of the charter provisions hereafter mentioned. On the same day—January 14, 1947—Robertson resigned as mayor of Berkeley, such resignation to take effect immediately, and the council accepted such resignation. A week later—January 21, 1947—the council, Robertson not then being a member—by resolution appointed Robertson city manager to take office January 22, 1947, at an annual salary of $9,000. It is the validity of this appointment that is involved in this proceeding.

Section 35 of the charter provides: *"No member of the Council shall* hold any other municipal office or hold any office or employment the compensation of which is paid out of the municipal moneys except as otherwise provided in this Charter; or *be* elected or *appointed to any office* created or *the compensation of which is increased by the Council while he was a member thereof."*

It is claimed that the italicized portions of this section bar Robertson from the position in question.

Section 27 of the charter provides in part: "The Council shall appoint an officer, who shall be known as the City Manager, who shall be the administrative head of the Municipal Government . . . He shall receive such salary as may be fixed by the Council; provided, however, that said salary shall not exceed the sum of $10,000 *per annum . . ."*

A portion of section 30 of the charter is relevant to the present controversy. It provides: "The chief officials of the City shall be City Clerk, Assessor, Treasurer, Collector, Attorney, Engineer, Chief of Police, Fire Chief, Street Superintendent, Health Officer and five Library Trustees . . ." The city manager is not mentioned in this enumeration.

It should be noted that section 35 of the charter above quoted was adopted in 1923. Prior to that time the section contained a similar prohibition except that the prohibition against appointment of any councilman to any office the compensation of which was increased during his term as councilman was limited to "until one year after the expiration of

the term for which he was elected." This quoted limitation was removed by the adoption of the 1923 amendment. The city manager form of city government was adopted by Berkeley in 1923.

The public policy behind such provisions as section 35 is obvious. It is to prevent councilmen from abusing their appointive powers by appointing one of their own members, or one of their recently resigned members, to offices created or the compensation of which was increased by the council of which the nominee was a member. In many jurisdictions it has been held that without a statutory or charter provision such as section 35 principles of public policy prohibit an appointing body from appointing one of its own members to any office. (See collection of cases 30 Cal.L.Rev. 686.) The California cases apparently do·not go so far. In *People* v. *Carter*, 12 Cal.App.2d 105 [54 P.2d 1139], it was held, among other things, that an appointing body could appoint one of its own members to another office as long as the two offices were not incompatible. In *People ex rel. Bagshaw* v. *Thompson*, 55 Cal.App.2d 147, 150 [130 P.2d 237], this holding was referred to as dictum, and this court stated: "In so far as the Carter case is concerned, we may say that the dictum above quoted is not in harmony with the weight of later authority." We do not find it necessary in this case to determine whether the dictum in the Carter case or the criticism of that dictum in the Thompson case is sound because we here have a charter provision adopting, in part, that rule of public policy.

Section 35 provides that members of the council are disqualified from appointment "to any office . . . the compensation of which is increased by the Council while he was a member thereof." In other words, the prohibition applies not only while the person involved remains a member of the council, but also applies thereafter if the council of which the person is a member raised the compensation of the office. No other interpretation seems reasonable. The limitation would appear to be clear and unambiguous. On its face it would seem to apply directly to the situation here presented. Admittedly, the council of which Robertson was a member increased the compensation of the then city manager from $7,500 to $8,500, and from $8,500 to $10,000. Petitioners seek to avoid this somewhat obvious interpretation by the following argument: They first point out that when the last

resolution was adopted by the council on January 21, 1947, Robertson was not then a member of the council, having resigned, and his resignation having been accepted on January 14, 1947. They then point out that when the council fixes the salary of a city manager the salary is not fixed for the "office" but for the incumbent, dependent upon his personal qualifications. It is contended that this does not apply to the offices mentioned in section 30 where the salary is fixed by the council for the office and not for the incumbent, and where there is no maximum limitation such as is contained in section 27. It is then argued that since the salary fixed for city manager is personal to the incumbent, and the maximum is fixed by the charter, that, when an incumbent city manager resigns, his salary terminates, and at that moment there is no salary fixed for that office, except, that under section 27, the new appointee may not receive more than $10,000 per year. When a new appointee is selected the council bargains with such candidate as to what salary he will receive, and when the council fixes that salary it is a new salary to be paid to that person and not a salary to be paid the "office" of city manager. Applying these arguments to the factual situation here presented petitioners argue that, although the salary paid Fisk when Robertson became a member of the council was $7,500, and although the council of which Robertson was a member then hired Vander Ende at $8,500, that did not amount to increasing the compensation of the "office" of city manager. In the same way it is argued that when the council of which Robertson was a member raised Vander Ende to $10,000 per year it did not increase the salary of the "office" of city manager, but simply increased the salary of Vander Ende. When Vander Ende resigned, so the argument goes, there was no salary at all fixed for the "office" of city manager and the council was in a position to bargain with any candidate subject only to the limitation that not more than $10,000 per year could be paid. It is also contended that to give section 35 the interpretation desired by respondent will result in a city councilman of Berkeley being forever barred from appointment or election to any Berkeley city office, the salary of which was raised by him as a city councilman. This, say petitioners, will discourage competent people from seeking the position of councilman and will deprive the city forever of the services of otherwise qualified

men and women. Petitioners urge that these arguments raise an ambiguity as to the application of section 35 to the facts of this case, and that under the rule of construction set forth in *Carter* v. *Commission on Qualifications of Judicial App's.*, 14 Cal.2d 179 [93 P.2d 140], this court must resolve that ambiguity in favor of eligibility to the office. In that case at page 182 it was stated: ". . . the right to hold public office, either by election or appointment, is one of the valuable rights of citizenship. . . The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office."

These arguments, while ingenious, are unsound. In the first place, the problem in the instant case of appointing a councilman to an office, the salary of which was increased while he was a councilman, and the public policy behind the doctrine against self-appointment, were not involved in the Carter case. That case stands for the sound proposition that, other things being equal, all ambiguities should be resolved in favor of eligibility to public office. That is a sound principle and is sound public policy. But in the instant case we are faced with another principle of public policy which has been codified into section 35. The policy behind such a provision is at least as strong as the policy enunciated in the Carter case. The rule of that case cannot be applied so as to distort the clear meaning of a statutory provision. The argument that by raising the salary of the incumbent city manager the compensation of the "office" of city manager was not raised, could be applied to any office, the salary of which is fixed by the council. If such argument is sound it would render practically meaningless the prohibition contained in section 35. It is quite clear that when the salary of city manager is raised the salary of that "office" is raised and the prohibition of section 35 automatically applies to the members of the council that were members at the time the raise was granted. No other interpretation is reasonably possible.

The argument that such an interpretation renders any councilman who votes for a raise in salary for any office forever ineligible to appointment or election to that office, and that the city may thus be deprived of competent public servants, is one that should be addressed to the framers of the city charter and to the electorate. Moreover, that prob-

lem is not before us. Whether the prohibition only applies for a reasonable time after the councilman severs his connection with the council, or until the end of his term, or applies forever, and whether the council could have fixed Robertson's salary at $7,500, the amount being paid Fisk when Robertson became a member of the council, and thus have avoided the application of the section, are problems not before us. Here Robertson's term as mayor does not expire until June 30, 1947. The council first appointed Robertson city manager while he was still a member of the council and fixed his salary at $9,000 per year, some $1,500 in excess of what was being paid Fisk when Robertson's term as mayor commenced. Then, in apparent realization that such appointment violated the charter, the council rescinded its action, accepted Robertson's resignation as mayor, and then a week later reappointed him city manager at the $9,000 salary. There can be no escape from the conclusion that such appointment violated the letter and spirit of section 35.

The alternative writ is discharged and the petition for a peremptory writ is denied.

Ward, J., concurred.