TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 98-302 |
| of | : | |
| | : | August 18, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE CHARLES R. MACK, COUNTY COUNSEL, YOLO COUNTY, has requested an opinion on the following question:

May a county supervisor be employed by the county housing authority commission to serve as its secretary and executive director?

CONCLUSION

A county supervisor may be employed by the county housing authority commission to serve as its secretary and executive director.

ANALYSIS

The Housing Authorities Law (Health & Saf. Code, §§ 34200-34606) **Footnote No. 1** was enacted by the Legislature to address "a shortage of safe or sanitary dwelling accommodations available at rents which persons of low income can afford . . . ." (§ 34201, subd. (a).) Section 34240 provides:

"In each county and city there is a public body corporate and politic known as the housing authority of the county or city. The authority shall not transact any business or exercise its powers unless, by resolution, the governing body of the county or city declares that there is need for an authority to function in it."

Section 34242 states:

"The governing body may adopt a resolution declaring that there is need for a housing authority if it finds either of the following:

"(a) That insanitary or unsafe inhabited dwelling accommodations exist in the county or city.

"(b) That there is a shortage of safe or sanitary dwelling accommodations in such county or city available to persons of low income at rentals they can afford."

With respect to a county housing authority, the board of supervisors appoints five commissioners, and in certain circumstances also appoints tenants of the authority, all of whom serve for fixed terms. (§§ 34271-34272.) **Footnote No. 2** Housing commissioners may be removed by the board of supervisors for "inefficiency, neglect of duty, or misconduct in office." (§ 34282.) Here, we deal with a county housing authority commission consisting of five commissioners and two tenant commissioners appointed by the board of supervisors. The question presented for resolution is whether the commission may employ a county supervisor as its secretary and executive director. We conclude that it may.

A county housing authority commission has responsibility for hiring officers and employees "as it requires." "An authority . . . may employ a secretary, who shall be executive director, technical experts, and such other officers, agents, and employees as it requires, and shall determine their qualifications, duties, terms of employment and compensation." (§ 34278, subd. (a).) The commission's personnel rules and regulations shall contain "procedures affecting conflicts of interest . . . ." (*Ibid.*; see *Figueroa* v. *Housing Authority* (1982) 131 Cal.App.3d 528, 532.)

1.      Rule Against Incompatible Public Offices

The first issue to be considered is whether a county supervisor would be precluded from serving as a county housing authority's secretary and executive director due to the common law doctrine of incompatible public offices. Under this doctrine, acceptance of the second office constitutes an automatic resignation from the first office. Offices are incompatible if there is any significant clash of duties or loyalties between the offices, or if one office has supervisory, auditory, or removal power over the other. The doctrine, however, applies only if both positions are offices. If one of the positions is that of an "employee," the doctrine is inapplicable. (See 80 Ops.Cal.Atty.Gen. 74, 75 (1997); 78 Ops.Cal.Atty.Gen. 362, 363 (1995); 73 Ops.Cal.Atty.Gen. 268, 269-270 (1990).)

Undoubtedly a member of a county board of supervisors holds a public office for purposes of the incompatible offices doctrine. (67 Ops.Cal.Atty.Gen. 409, 410 (1984).) However, is a secretary and executive director of a housing authority an officer or employee for purposes of the common law prohibition? This question was addressed in a 1978 letter opinion (Cal.Atty.Gen., Indexed Letter, No. IL 78-102 (July 18, 1978)) in which we concluded that the executive secretary of a county housing authority does not hold an "office" for purposes of the common law rule. We stated:

"While Health and Safety Code section 34278(a) authorizes the employment of an executive secretary, the position, if created at all, is a creature of a contract entered into by the authority, which sets the terms of employment. A public officer is not the offspring of a contract. (*Pacific Finance Corp. v. City of Lynwood* (1931) 114 Cal.App. 509, 514.) No statutory duties are set forth for the executive secretary; rather, the commissioners determine the duties and functions performed. The commissioners, not the executive secretary, exercise the sovereignty of the state.  The position of executive secretary is transitory, subject to being abolished if the commissioners so choose. If the position is filled, the contract of employment, rather than statute, dictates the terms of employment. (Cf., *Holtzendorff* v. *Housing Authority* (1967) 250 Cal.App.2d 596.)

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . The common law doctrine of incompatibility of office is inapplicable to the position of housing authority executive secretary because that doctrine applies only to public offices. . . ."

We reaffirm our 1978 conclusion. The secretary and executive director of a housing authority does not hold an office for purposes of the incompatible offices doctrine. Accordingly, this common law rule would not prevent a county supervisor from being employed as the secretary and executive director of a county housing authority.

2.      Government Code Section 1126

Next we consider the conflict of interest provisions of Government Code section 1126. This statute generally prohibits local agency officers and employees from engaging in incompatible employment for compensation. It states in part:

"(a) Except as provided in Sections 1128 and 1129, a local agency officer or employee shall not engage in any employment, activity, or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his or her duties as a local agency officer or employee or with the duties, functions, or responsibilities of his or her appointing power or the agency by which he or she is employed. . . .

"(b) Each appointing power may determine, subject to approval of the local agency, and consistent with the provisions of Section 1128 where applicable, those outside activities which, for employees under its jurisdiction, are inconsistent with, incompatible to, or in conflict with their duties as local agency officers or employees. . . ."

The provisions of Government Code section 1126 are not self-executing; officers and employees must first be given notice of the prescribed activities and intended disciplinary action to be taken and appeals procedures available. (*Mazzola* v. *City and County of San Francisco* (1980) 112 Cal.App.3d 141.) Furthermore, the statute is inapplicable to elected officials, since they "have no appointing power other than the electorate . . . ." (64 Ops.Cal.Atty.Gen. 795, 800 (1981).)

Hence, as an elected official (Gov. Code, § 25000), the county supervisor in question would not be affected by Government Code section 1126. With regard to the position of secretary and executive director, the housing authority commissioners have the discretion under the statute to determine whether the person's duties as a county supervisor would be incompatible with his duties as their employee.

3.      Government Code Section 1090

The third issue to be considered is whether the terms of Government Code section 1090 would preclude a county supervisor from being named the secretary and executive director of a county housing authority. This statute states in part:

"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ."

In 66 Ops.Cal.Atty.Gen. 156, 157 (1983), we observed:

"'Section 1090 of the Government Code codifies the common law prohibition and the general policy of this state against public officials having a personal interest in contracts they make in their official capacities. [Citations.] Mindful of the ancient adage, that "no man can serve two masters" [citations], "a self-evident truth, as trite and impregnable as the law of gravity" [citation], the section was enacted to insure that public officials "making" official contracts not be distracted by personal financial gain from exercising absolute loyalty and undivided allegiance to the best interest of the entity which they serve, and at least with respect to those contracts, it does so by removing or limiting the *possibility* of their being able to bring any direct or indirect personal influence to bear on an official decision regarding them. [Citations.] The mechanism of the section is one of prohibiting public officials from being personally financially interested as private individuals in any such contract. . . .'" **Footnote No. 3**

We have previously concluded that public employment constitutes a "contract" within the meaning of Government Code section 1090. (65 Ops.Cal.Atty.Gen. 305, 308, fn. 4 (1962); 36 Ops.Cal.Atty.Gen. 121 (1960).) Accordingly, a legislative body or other board or commission could not appoint one of its own members to an employment position within the agency; the board member would have a proscribed financial interest in receiving a salary as an employee.

However, we do not have that situation here. Significantly, it is the housing authority commissioners who would hire the supervisor as their employee. The commissioners act as an administrative arm of the state in pursuing the state concern of developing new housing opportunities. (*Housing Authority* v. *City of L.A.* (1982) 38 Cal.2d 853, 862.) The board of supervisors is a separate body and has no role to play in the commissioners' hiring decisions. (§ 34278.) Hence, it would be the housing authority, not the board of supervisors, that would "make" the employment contract with the supervisor for purposes of Government Code section 1090. **Footnote No. 4**

We considered a similar situation in 21 Ops.Cal.Atty.Gen. 90 (1953), where a city treasurer contemplated the deposit of city funds in a bank partly owned by a city council member. Our analysis was as follows:

"The Attorney General has held that the fact that a person is a legislator does not prevent his entry into contracts of sale with the State of California or its agencies, except that he may not enter into a contract with the legislature itself (14 Ops. Cal. Atty. Gen. 78); that a head court house gardener who owned a private nursery was not disqualified from selling nursery supplies to the county of which he was an employee because of the discretion vested in the county purchasing agent to conclude contracts for the county (3 Ops. Cal. Atty. Gen. 188); that a County Supervisor is not precluded from contracting for construction work with a school district since the contracts for school buildings or school construction are let by Boards of School Trustees without control or supervision of the County Board of Supervisors (17 Ops. Cal. Atty. Gen. 44). The significant fact in each of these opinions is the independent status of the party contracting on behalf of the governmental agency.

"The selection of the depository in the instant case is in the discretion of the City Treasurer and not subject to the supervision or control of the City Council. It is true that the council is responsible for the appointment and removal of the Treasurer, but the relationship between one member of the council and the Treasurer is no less remote than that of a legislator and an agency of the State Government.

"We are of the opinion that the public funds of the City of Modesto may be deposited by the City Treasurer in a bank in which a councilman of the city is a director and a stockholder with less than 5% of the outstanding capital stock." (*Id*., at pp. 91-92.)

Although here the members of the county housing authority commission are subject to removal for cause by the board of supervisors (§ 34282), their independent contracting powers would not be affected by such limited supervisorial control for purposes of Government Code section 1090. (21 Ops.Cal.Atty.Gen., *supra*, at 92.) Accordingly, Government Code section 1090 would not prohibit a person from holding the two positions involved herein. **Footnote No. 5**

4.      Rule Against Self-Appointments

In 23 Ops.Cal.Atty.Gen. 75, 75-77 (1954), we discussed at length the common law rule against self-appointments. We stated in part:

"There is no reported California case holding directly that an appointing board or commission may not appoint one of its members to office. In most of the states, however, there is a well-defined, court announced rule of public policy which prohibits a public board from conferring an appointment on one of its own members. This is the rule against self-appointment. . . . Authoritative legal texts pronounce the rule as one of general application. . . . It is referred to as a rule of common law. . . .

    ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" . . . In view of the overwhelming weight of judicial authority in other states and the [favorable] dicta in the *Thompson* [55 Cal.App.2d 147] and *Jensen* [77 Cal.App.2d 921] cases, we do not believe the California courts would reject the rule against self-appointments as an expression of California public policy. . . ."

While we reaffirm the validity of the common law proscription against self appointments in California (See 76 Ops.Cal.Atty.Gen. 254, 256-259 (1993); 73 Ops.Cal.Atty.Gen. 357, 359-360 (1990)), this prohibition has no application here. Even if a housing authority secretary and executive director holds a position subject to this rule, it is the housing authority commissioners who make the appointment, not the county board of supervisors. As previously indicated, the housing authority is a separate body and autonomous in its operations, with its own sources of funding and areas of responsibility. (§§ 34310-34334.) We do not attribute the actions of the one board to the other in such circumstances. Consequently, there would be no "self" in the appointment of a county supervisor by a county housing authority commission.

5.      Rule Against Conflicts of Interest

Finally, even if a statute does not prohibit a particular conflict of interest, consideration must be given to the common law rule against such conflicts. (See *Kuner* v. *Brea Redevelopment Agency* (1997) 55 Cal.App.4th 511, 519.) In *Clark* v. *City of Hermosa* Beach (1996) 48 Cal.App.4th 1152, 1171, the court observed:

". . . Actual injury is not the principle the law proceeds on. Fidelity in the agent is what is aimed at, and as a means of securing it the law will not permit him to place himself in a position in which he may be tempted by his own private interests to disregard those of his principal. This doctrine is generally applicable to private agents and trustees, but to public officers it applies with greater force, and sound policy requires that there be no relaxation of its stringency in any case that comes within its reason. . . . [Citation.] '[T]he common law doctrine against conflicts of interest . . . prohibits public officials from placing themselves in a position where their private, personal interests may conflict with their official duties.' (64 Ops.Cal.Atty.Gen. 795, 797 (1981); accord, 70 Ops. Cal.Atty.Gen. 45, 47 (1987).)" (Fn. omitted.)

Thus, the county supervisor in question must not act officially when to do so would be to his *personal* gain. For example, with respect to the board of supervisors appointing or removing housing authority commissioners, he would have an obvious conflict of interest since the commissioners set the terms and conditions of his employment as the secretary and executive director of the housing authority. However, the board of supervisors may still act. The interested supervisor would only be required to abstain in the matter, neither voting on it nor attempting to influence the vote of the other members of the board. (See 78 Ops.Cal.Atty.Gen. *supra*, at 374; 73 Ops.Cal.Atty.Gen. 191, 196 (1990); 70 Ops.Cal.Atty.Gen. 157, 162 (1987); 26 Ops.Cal.Atty.Gen. 5, 7 (1955).).

Unless the Legislature specifically prohibits the holding of a public office and public employment at the same time (see, e.g., Ed. Code, §§ 35107, 72103; Gov. Code, §§ 53227-53227.2), conflict of interest principles generally do not bar a person from holding two different positions, instead requiring only abstention when a particular matter arises. (See *Thompson* v.

*Call* (1985) 38 Cal.3d 633, 645-647; *Eldridge* v. *Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311, 320-321; 73 Ops.Cal.Atty.Gen., *supra*, at 193-196.)

In sum, we conclude that a county supervisor may be employed by a county housing authority commission to serve as its secretary and executive director.

\* \* \* \* \*

**Footnote No. 1**
Section references are to the Health and Safety Code unless otherwise indicated.
**Footnote No. 2**
Alternatively, the board of supervisors may declare itself to be the commissioners of the authority (§ 34290), with a separate housing commission (§ 34291) functioning in an advisory capacity (§ 34292).
**Footnote No. 3**
Section 34281 specifically prohibits a housing authority commissioner from having an interest in a housing project or any property to be included in any project, or from having any interest in any contract for goods or services relating to a housing project, with limited exceptions.
**Footnote No. 4**
In our 1978 letter opinion concluding that a county supervisor could serve as the executive secretary of a county housing authority (Cal.Atty.Gen., Indexed Letter No. IL 78-102, *supra*), the housing authority's executive secretary did not hold a salaried position, and we thus did not consider the application of Government Code section 1090.
**Footnote No. 5**
If the county, through its board of supervisors, were to propose entering into a contract with the county housing authority (see § 34314), such contract would require examination in light of the requirements of Government Code section 1090. (See, e.g., Gov. Code, § 1091.5, subd. (a)(9); 78 Ops.Cal.Atty.Gen., *supra*, at 369-370.)